37 N.J. Super. 535 (1955)
117 A.2d 669
BOARD OF REVIEW OF THE DIVISION OF EMPLOYMENT SECURITY OF THE DEPARTMENT OF LABOR AND INDUSTRY OF THE STATE OF NEW JERSEY, AND WILLIAM A. McKENNA, JOHN KAMMERER, ALBERT C. HORNE, ANTHONY COLAZZO, MICHAEL LOMUTI, PLAINTIFFS-RESPONDENTS,
v.
BOGUE ELECTRIC CO., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 19, 1955.
Decided October 21, 1955.
*537 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. George J. Miller argued the cause for the defendant-appellant.
Mr. Gerald M. Freundlich argued the cause for the plaintiffs-respondents.
The opinion of the court was delivered by FREUND, J.A.D.
The five individual respondents are former employees of the appellant, Bogue Electric Co., which operates a plant in Paterson, New Jersey. The collective bargaining agent for the approximately 500 production workers there employed is Local 867 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. The contract between Local 867 and the Bogue Electric Co. contains the following provisions:

"ARTICLE XIV STOPPAGE OR INTERRUPTION OF WORK.
SECTION 1. Under no circumstances shall there be any strike, sympathy strike, lockout, cessation of work, sit-down, slow-down, picketing, boycott, refusal to perform any part of duty or other interference with or interruption of the normal conduct of the Company's business during the term of this agreement.
SECTION 2. The Union shall forthwith suspend from membership and the Company shall immediately discharge any Employees engaged in or encourages or suggests any strike, or sympathy strike, or cessation of work, or sit-down, or slow-down, or picketing, or boycott or wildcat strike, during the term of this agreement."
On Saturday, December 4, 1954, John Green, a shop steward for Local 867, was discharged by the appellant. On Monday, December 6, at about 9 A.M. between 40 and 60 employees walked out of the appellant's plant in protest against the discharge of Green. Their cards were forthwith *538 removed from the timerack, which prevented their returning to work. Later, the individual respondents left their places of employment, either in protest at Green's discharge or at the appellant's refusal to permit the employees who had previously walked out to return to work. Their timecards were likewise removed from the rack and all who had participated in the unauthorized walkout were notified by telegram that they had been discharged. A picket line was thereupon set up.
The testimony and signed statements of each of the individual respondents disclose the following: Kammerer and Lomuti admitted they walked off their jobs in sympathy with the union steward who had been discharged. McKenna, shortly after reporting for work on December 6, upon learning that Green had been discharged, got his hat and coat and punched out his timecard. When he went to return to work he found his timecard had been removed and he joined the picket line when it was formed. Colazzo's signed statement discloses that during the morning of December 6 he stamped out his timecard and walked out of his job in sympathy with the union steward. As to the fifth respondent, Horne, the scant record is confusing. It would appear that he did not testify; there is a disparity in his signed statement as to whether he worked on December 6, although it seems fairly clear that he did not report for work on December 7, but his statement gives as the reason that he attended to some personal business that day and did not join the picketing.
The five individual respondents applied for unemployment compensation benefits. Their claims were denied, and the denial affirmed by the Appeal Tribunal, which found that the plaintiffs had walked off their jobs in protest at the discharge of the shop steward, without authority from their union or notice to the employer, that they had voluntarily absented themselves from their employment to the detriment of the employer's interest, and that they were discharged for misconduct in violation of the union agreement. The Board of Review in five separate findings of fact reversed the Appeal *539 Tribunal, disregarding any question of breach of contract and holding that the acts of the employees were not misconduct.
The employer appeals arguing that a worker who voluntarily walks off his job thereby breaching the collective bargaining agreement between the employer and the union of which he is a member is guilty of misconduct, and if discharged therefor is disqualified for unemployment compensation benefits. N.J.S.A. 43:21-5(b).
Where contracting parties have manifested their intentions by a written agreement, they are bound thereby and their intentions as so expressed must be enforced. Hence, the individual respondents here are legally bound by the collective bargaining agreement made in their behalf and for their benefit by the local union of which they were members. It was so stated in Christiansen v. Local 680, Milk Drivers, etc., 126 N.J. Eq. 508, 512 (Ch. 1940):
"A collective bargaining agreement is the joint and several contract of the members of the union, made by the officers of the union as their agents. It is enforceable by or against individual members of the union in matters which affect them peculiarly; and it is enforceable by or against the union in matters which affect all the members alike, or large classes of members, for instance, those who are employees of the other party to the contract."
The purpose of the Unemployment Compensation Act is to insure a diligent worker against the vicissitudes of enforced unemployment not voluntarily created by the worker. R.S. 43:21-2. It is generally recognized that unemployment compensation acts should be liberally construed  but not to such an extent as to enable an employee to voluntarily leave his work in violation of a "no strike" agreement with the employer and thereafter be entitled to unemployment benefits. See Campbell Soup Co. v. Board of Review, Division of Employment Security, 13 N.J. 431 (1953), which held that:
"Benefits are allowable only to claimants who satisfy the eligibility tests prescribed by R.S. 43:21-4 and who are not disqualified within any of the provisions of R.S. 43:21-5.
*540 * * * the statute is designed to serve the general public interest and not alone the interest of the unemployed."
The pertinent statutory provision, N.J.S.A. 43:21-5(b), provides as follows:
"An individual shall be disqualified for benefits:

* * * * * * * *
(b) For the week in which he has been discharged for misconduct connected with his work, and for the five weeks which immediately follow such week (in addition to the waiting period), as determined in each case."
Here, the employer contends that the claimants were properly discharged when in violation of their collective bargaining agreement they voluntarily left their work.
Collective bargaining agreements are negotiated for the benefit of both labor and management, and where, as here, the agreement specifically outlaws strikes or work stoppages, any "wildcat" strike not only disrupts the normal business operations of the employer, but is a source of embarrassment to the union in that it tends to impair its responsibility for its own commitments. In the collective bargaining agreement in the instant case, a standard of behavior on the part of the employees both toward their union and toward their employer was agreed upon, any violation of which by an employee, being a breach of his contract, constituted misconduct, warranting his immediate suspension by the union and discharge by the company. When the individual respondents voluntarily left their work, took down their timecards and "punched out" in order to join in a protest against their employer, they violated their contract and upon their consequent discharge were disqualified for benefits under N.J.S.A. 43:21-5(b).
Counsel has not cited, nor has our independent research disclosed, any authority in this state dealing with N.J.S.A. 43:21-5(b), but decisions in Pennsylvania and Wisconsin support the appellant. The courts of Pennsylvania have held that an unwarranted or illegal work stoppage in violation of a collective bargaining agreement constitutes "willful *541 misconduct connected with his work" within the meaning of substantially similar provisions of its unemployment compensation act. Our statute makes a claimant ineligible for benefits if he be guilty merely of misconduct connected with his work, but in Pennsylvania the misconduct must be "willful." Duquesne Brewing Co. of Pittsburgh v. Unemployment Comp. Bd. of Rev., 359 Pa. 535, 59 A.2d 913 (Sup. Ct. 1948); Yellow Cab Co. of Philadelphia v. Unemployment Comp. Bd. of Rev., 170 Pa. Super. 625, 90 A.2d 599 (Super. Ct. 1952); H.J. Heinz Co. v. Unemployment Compensation Bd. of R., 172 Pa. Super. 324, 94 A.2d 82 (Super. Ct. 1953); Weimer v. Unemployment Com. Bd. of R., 176 Pa. Super. 348, 107 A.2d 607 (Super. Ct. 1954); 146 A.L.R. 243; Kelleher v. Unemployment Comp. Bd. of Rev., 175 Pa. Super. 261, 104 A.2d 171, 41 A.L.R.2d 1158. A protest walkout was held misconduct connected with employment in Streeter v. Industrial Comm., 269 Wis. 412, 69 N.W.2d 583 (Sup. Ct. 1955).
In all of the above cited cases, the employees stopped their work in protest of the suspension or discharge of other employees. In substance the cases hold, and we agree, that where an employee voluntarily leaves his work in violation or breach of an existing collective bargaining agreement between his union and his employer, he is disqualified for unemployment compensation benefits. Cf. Bigelow v. Waselik, 133 Conn. 304, 50 A.2d 769 (Sup. Ct. Err. 1946); Boynton Cab Co. v. Neubeck, 237 Wis. 249, 296 N.W. 636 (Sup. Ct. 1941). See Kempfer, Disqualification for Voluntary Leaving and Misconduct, 55 Yale L.J. 147.
The respondents rely upon Marathon Electric Mfg. Corp. v. Industrial Comm., 269 Wis. 394, 69 N.W.2d 573 (Sup. Ct. 1955); but that case has no present application because there two employees were held to have been improperly discharged and hence qualified for unemployment benefits because their absence from work at the time of the walkout was clearly shown to have been for personal reasons not connected with the walkout. It is to be observed that the other employees of the same employer who did walk out on *542 that occasion were held discharged for misconduct and disqualified for unemployment benefits, in the Streeter case, supra.
Although the record both before the Appeal Tribunal and the Board of Review is scant and it does not appear that the agency produced all relevant proofs, we are satisfied that Kammerer, Lomuti, McKenna and Colazzo walked off their jobs in concert with other workers in sympathy with the union steward, constituting misconduct for which they were discharged and disqualified for unemployment compensation benefits, N.J.S.A. 43:21-5(b), and as to them the judgment of the Board of Review is reversed. However, as to Horne, the record is practically barren  completely inadequate to warrant any determination of his status, and as to him the cause is remanded so that the Board may receive evidence and make its determination only after a full investigation. Krauss v. A. & M. Karagheusian, 13 N.J. 447, 457 (1953).