BOGUE ELECTRIC CO., APPELLANT-RESPONDENT, v. BOARD OF REVIEW OF THE DIVISION OF EMPLOYMENT SECURITY OF THE DEPARTMENT OF LABOR AND INDUSTRY OF THE STATE OF NEW JERSEY, AND WILLIAM A. McKENNA, JOHN KAMMERER, ALBERT C. HORNE, ANTHONY COLAZZO, MICHAEL LOMUTI, RESPONDENTS-APPELLANTS.

Argued April 16, 1956—Decided May 7, 1956.

*Mr. Clarence F. McGovern* argued the cause for the respondents-appellants.

*Mr. Gerald M. Freundlich* argued the cause for the appellant-respondent.

The opinion of the court was delivered by

OLIPHANT, J.   The Board of Review of the Division of Unemployment Security, State Department of Labor, pe-

titioned for certification from a judgment of the Appellate Division, Superior Court, and we granted certification. *R. R.* 1:10–2(*e*). The Board of Review has the right to appeal an adverse judgment and the claimants not joining in the application for certification are parties to this appeal. *N. J. S. A.* 43:21–6(*h*).

The Board of Review had reversed the decisions of its Appeal Tribunal disallowing the claims for benefits under *N. J. S. A.* 43:21–5(*b*). It held that the claimants were eligible for benefits under this section, since the stoppage of work was not due to a labor dispute as defined by *N. J. S. A.* 43:21–5(*d*), and that a strike or walkout by a group of employees, whether sanctioned by their labor union or not, was not such misconduct as would disqualify the claimants from benefits under *N. J. S. A.* 43:21–5(*b*).

The Appellate Division reversed and held that the acts in question were such disqualifying misconduct and the applicants, McKenna, Kammerer, Lomuti and Colazzo disqualified for benefits and remanded the claim of Horne to the Board of Review for the purpose of taking further evidence.

All the facts are stated in the opinion of the Appellate Division, *Board of Review, etc., v. Bogue Electric Co.,* 37 *N. J. Super.* 535 (*App. Div.* 1955), so we shall briefly state such salient facts necessary for our decision. On December 4, 1954 the employer, Bogue Electric Company, discharged one Green, an employee and shop steward for the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Warehousemen and Helpers, Local 867. On December 6, 1954 a number of the employees walked off their jobs at 9:00 A. M. in protest against the discharge of Green, so that there was a cessation of work by a number of employees. The employer immediately removed from the racks the time cards of all persons absent from their posts and this action had the effect of preventing them from returning to work. The same evening they were all discharged by telegram.

*N. J. S. A.* 43:21–5(*b*) provides as follows:

"An individual shall be disqualified for benefits:  *  *  *
(b) For the week in which he has been discharged for *misconduct connected with his work,* and for the five weeks which immediately follow such week (in addition to the waiting period), as determined in each case."   (Italics supplied.)

The collective bargaining agreement governing the terms and conditions of employment by the employer of members of Local 867 contained the following provisions:

"Article XIV Stoppage or Interruption of Work.
    Section 1.   Under no circumstances shall there be any strike, sympathy strike, lockout, cessation of work, sit-down, slow-down, picketing, boycott, refusal to perform any part of duty or other interference with or interruption of the normal conduct of the Company's business during the term of this agreement.
    Section 2.   The Union shall forthwith suspend from membership and the Company shall immediately discharge any Employees engaged in or encourages or suggests any strike, or sympathy strike, or cessation of work, or sit-down or slow-down, or picketing, or boycott or wildcat strike, during the term of this agreement."

■ We are in accord with the conclusion of the Appellate Division that the cessation of work under the factual situation presented here was such misconduct connected with the employees' work so as to disqualify them from benefits under *N. J. S. A.* 43:21–5(*b*).

The appellant, Board of Review, argues that there was a labor dispute in the plant and *N. J. S. A.* 43:21–5(*b*) does not apply to activities in a labor dispute.  The argument is that if this section takes a union-sanctioned strike out of the misconduct class the same should apply to one not sanctioned by the union because the statute deals with individual claimants rather than labor unions and there is nothing in the statute which gives a union-sanctioned strike any different status than one called by individuals.

■ The basic question is what acts of an employee constitute the "misconduct connected with his work" that disqualify an employee from benefits for the periods fixed by *N. J. S. A.* 43:21–5(*b*).  Paragraph (*d*) of the same section

disqualifies an employee only when unemployment is the result of a work stoppage as defined therein resulting from a labor dispute. The problem is one of statutory interpretation, and as we have stated our province is merely to interpret and apply this act to particular situations as they are presented, keeping in mind the general policy of the act, but we are not permitted by construction to lessen or broaden the scope of the statute, and must construe it as written. *Gerber v. Board of Review, etc.,* 20 *N. J.* 561, 566 (1956).

█ The motive that led to the enactment of the statute and the declared policy therein is the key to the understanding of the statute, and the public policy upon which it is based is to achieve social security by affording protection against a hazard in our economic life by relieving economic insecurity due to involuntary unemployment. *Glover v. Simmons Co.,* 17 *N. J.* 313 (1955). We find nothing in the statute that indicates that employees are entitled to finance a labor dispute under the Unemployment Compensation Act. See *Campbell Soup Co. v. Board of Review, Division of Employment Security,* 13 *N. J.* 431, 436 (1953), where we stated, "The statute is designed to serve the general public interest and not alone the interest of the unemployed."

██ While we agree with the Board of Review that the meaning of the term "misconduct" in the statute is not to be determined by what is set forth in a private collective bargaining agreement, nevertheless a collective bargaining agreement is the joint and several contract of the members of the union made by the officers of the union as their agents. It is enforceable by and against individual members of the union in matters which affect them peculiarly; and it is enforceable by or against the union in matters which affect all the members alike or large classes of members, particularly those who are employees of the other party to the contract. *Christiansen v. Local* 680 *of Milk Drivers, etc.,* 126 *N. J. Eq.* 508, 512 (*Ch.* 1940); *cf. Kennedy v. Westinghouse Electric Corp.,* 16 *N. J.* 280 (1954). It establishes certain

norms or standards by which the rights and duties of the employer and employees are evaluated and it is to be construed with regard to the situation of the parties, the attendant circumstances and the objects they were striving to attain. *Kennedy v. Westinghouse Electric Corp., supra.*

The contract here laid down a standard of behavior with respect to the cessation of work which was breached when these particular employees stopped work in protest against the discharge of the shop steward. There was a breach of the terms of the contract warranting their immediate suspension by the union and the immediate discharge of such employees by the company on such cessation of work. It seems to us that a voluntary and unauthorized cessation of work by employees of the scale indicated here is a sufficiently serious threat to an employer to be adjudged misconduct in the sense that such term is used in the statute, *N. J. S. A.* 43:21–5(*b*).

It is difficult to conceive of any activity on the part of employees which would be more damaging to an employer, and this fact is recognized by the contract. There is no impingement here on the right to strike or to refuse to work which is constitutionally guaranteed, and the suspension of unemployment compensation for a limited period where such refusal to work is present does not violate this right. It would seem to be altogether at variance with the policy of the statute to permit a group of employees to deliberately violate a basic provision of a collective bargaining agreement which the parties to the agreement consider of such importance that, for a violation thereof, the union is required to suspend such an employee from membership and the employer in turn to discharge him immediately. It would be in plain derogation of the spirit and policy of the act—protection against the hazard of *involuntary* unemployment—to provide unemployment benefits to employees who were lawfully discharged for a deliberate breach of a contract to which they were parties.

The Appellate Division in its opinion reviewed the decisions in other states and pointed out that these states had

determined that an illegal work stoppage in violation of a collective bargaining contract constitutes "willful misconduct connected with his work" under their statutes which make "willful misconduct" the disqualification from benefits under analogous sections of their statute. Our statute establishes the standard as "misconduct." We agree with these conclusions of the Appellate Division and also that the case relied on there and here, are distinguishable for the reasons stated.

█ The Board of Review attempts to justify its decision by arguing, as it did below, that the employer "locked out" these claimants in violation of the provisions of Article XIV, Section 1, of the contract wherein the employer agreed that "under no circumstances shall there be any * * * lock out * * *." The breach of this contract was the "cessation of work" by the employees which brought into operation the punitive provisions of section 2, that required suspension by the union and the discharge of the employees. These very provisions negative the claim that the discharge of the employees under the terms of a contract was a lock out. The term "lock out" as used in the field of labor law comprehends a voluntary and unlawful cessation or break in the term of employment by the employer. Here the act of discharge by the employer was lawful and required by the collective bargaining agreement to which the union and these employees are parties. In brief, by their acts they locked themselves out under the terms of a contract they voluntarily made.

We neither express nor intimate any opinion as to the right of the employee to benefits under the statute where an employer commits a breach of the collective bargaining agreement and then "locks out" his employees in violation of this agreement and they on their part have committed no acts which would disqualify them for benefits under *N. J. S. A.* 43:21–5(*b*) and *N. J. S. A.* 43:21–5(*d*) *et seq.*

We conclude, as did the Appellate Division, that the claimants McKenna, Kammerer, Lomuti and Colazzo are disqualified for benefits.

The Appellate Division remanded the claim of Horne for further testimony because in their words "The record is practically barren—completely inadequate to warrant any determination of his status." This remark apparently refers to the record made before the Board of Review which was the only thing before the Appellate Division. On application for certification we were furnished with a supplemental appendix giving the testimony of Horne before the Appeal Tribunal of the Board and his uncontradicted testimony is that he was absent from his job with permission to attend to a personal errand at which time his time card was picked up and he was subsequently discharged. The personal errand he was attending to was with a public agency and their records were available to the respondent-employer to contradict Horne if he were in fact untruthful. Respondent had the opportunity to present such proof before the Appeal Tribunal but did not appear, and before the Board of Review where it did appear. It failed to avail itself of these opportunities.

Since by virtue of *N. J. S. A.* 43:21–6(*h*) Horne is a party to this appeal and therefore entitled to have his case decided, we have come to the conclusion that Horne is entitled to the benefits awarded him by the Board of Review which were denied him by the Appeal Tribunal. We see no purpose in remanding this cause since we feel the respondent is bound by the record made below.

The judgment of the Appellate Division as modified is affirmed without costs.

*For modification*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, JACOBS and BRENNAN—6.

*Opposed*—None.