16 A.3d 322

POLICEMEN'S BENEVOLENT ASSOCIATION, LOCAL NO. 11,
PLAINTIFF–RESPONDENT, v. CITY OF TRENTON,
DEFENDANT–APPELLANT.

Argued January 31, 2011—Decided March 29, 2011.

Rabner, C.J., dissented and filed opinion in which Rivera–Soto and
Hoens, JJ., joined.

*Steven S. Glickman* argued the cause for appellant (*Ruderman & Glickman and Knapp, Trimboli & Prusinowski*, attorneys; *Stephen E. Trimboli* and *Molly S. Marmion*, on the briefs).

*Raymond G. Heineman* argued the cause for respondent (*Kroll Heineman*, attorneys).

Justice LONG delivered the opinion of the Court.

At issue on this appeal is the application of the "reasonably debatable" standard that governs judicial review of a public employment arbitration award. An arbitrator interpreted a phrase in a collective bargaining agreement (the Agreement)—"no overtime shall be paid for a ten minute period prior to the commencement of a tour"—to permit the payment of compensation at

straight-time rates for that period. The question is whether that interpretation was reasonably debatable.

In reaching his conclusion, the arbitrator relied on the actual words of the Agreement, wove together its relevant provisions, and read it holistically, without emphasizing isolated provisions. As a result, he derived a plausible conclusion regarding its meaning—that if the parties had intended that the employees receive no pay at all for time actually worked, they would have said so. Because they did not, the arbitrator concluded that straight-time pay for the muster period was contemplated.

To be sure, the arbitrator's interpretation was not the only one that could have flowed from the Agreement and may not even have been the best one. It did not need to be. All that was required was that the arbitrator's conclusions be reasonably debatable. Because they were, we affirm the Appellate Division and remand the matter to the trial court for confirmation of the award.

## I.

Policemen's Benevolent Association, Local No. 11(PBA) is a labor organization that represents the non-supervisory police officers employed by the City of Trenton (City). At all times relevant to this appeal, PBA and the City were parties to the Agreement.

The instant dispute began when the City disseminated an order requiring certain employees to report for "muster" ten minutes prior to the scheduled start time of their shifts without pay. Employees who failed to report within the prescribed timeframe were subject to discipline. The City explained the new policy as stemming from the need for officers to "complet[e] roll call and other preliminary duties in time ... to be promptly deployed to patrol" and "to be brought up-to-date on developments in their patrol areas" without sacrificing their ability to "respond to calls in a timely manner, notwithstanding the fact that a shift change is occurring[.]"

The City based its authority to require an uncompensated ten-minute muster on Section 8.03 of the Agreement, which reads:

It is recognized that employees may be required for the purpose of muster at the commencement of a tour to report in advance of the tour starting time and for the purpose of report making at the end of a tour to remain at the termination of [a] tour. In accordance with this recognition, no overtime shall be paid for a ten minute period prior to the commencement of a tour, or for a ten minute period at the termination of a tour, but in the event an employee is required to report earlier than ten minutes prior to the commencement of a tour or to remain beyond ten minutes after the end of a tour, the employee shall be paid the overtime rate for all time worked in excess of, the work day of eight consecutive hours.

That provision, never utilized by the City before the events forming the substance of this appeal, has been a part of the contract since 1985, if not earlier. A revised Agreement which left Section 8.03 unaltered was negotiated and signed as recently as 2000.

Section 8.03 is part of Article VIII of the Agreement which is entitled "Compensation for Overtime." Section 8.01 of that article provides:

Whenever any member of the Division of Police, in any work week shall be required, directed or authorized to work for any periods in excess of the normal hours of employment as defined in Article VII, Section 7.01 herein, he shall be paid at the rate of time and one-half (1½) of his regular pay rate (including benefits) for all such overtime. Thus, if an employee shall be required, directed or authorized to work in excess of the number of consecutive hours in his regularly scheduled work day, he shall be paid overtime for such excess time regardless of the total number of hours worked during that week, and if he is required, directed or authorized to work for more than forty (40) hours in any one week, he shall be paid overtime for such excess time regardless of the total number of days worked during that week.

PBA filed a grievance challenging the right of the City to demand an additional ten-minute period of work without pay. The dispute was eventually submitted to binding arbitration and on September 13, 2007, Arbitrator Gerard G. Restaino sustained PBA's grievance finding that officers who report early are entitled to compensation "at the straight-time rate."

In ruling, the arbitrator made the point that there are no "stand-alone" provisions in the Agreement and that all provisions "must be read harmoniously." With that as his point of departure, the arbitrator recognized the right of the City to issue the

ten-minute-muster memorandum. He then looked to the Agreement, as a whole, to resolve the compensation issue. Pivotal to the arbitrator was that in other sections of the Agreement, the parties demonstrated command of language that would exclude any and all compensation. For example, Appendix B, dealing with additional training hours, clearly evidenced that intent:

> Because the new schedule requires fewer weekly hours worked by members and does not provide sufficient manpower to allow training during normal work hours, *members will be required to report for certain training outside normal working hours at no additional compensation.*
>
> [ (Emphasis added).]

According to the arbitrator, if the parties had intended to preclude all compensation for the extra ten minutes of muster, they would have used the specific and unmistakable language present in Appendix B. It was the arbitrator's view that the "no overtime shall be paid" language of Section 8.03, unlike the "no additional compensation" language of Appendix B, was silent regarding straight-time compensation and thus failed to overcome the strong presumption of pay for work.

PBA moved to confirm the award. The trial judge determined that the plain language of the Agreement precluded any compensation for the ten-minute-muster period:

> The contract in this syllogistic form speaks to normal hours and it speaks to straight time. It's very explicit in that regard.
>
> . . . .
>
> Anything over the 40 hours, anything over the number of days in a given week is going to be overtime pursuant to the very express, very clear, unambiguous language of the contract. . . .
>
> . . . What the parties agreed to was that this ten minutes would not be compensated by the only rate that it could be compensated by, and that is time and a half because it was not considered as overtime as defined in the contract.

The trial judge concluded that the interpretation advanced by the arbitrator was not reasonably debatable.

PBA appealed and the Appellate Division, over a dissent, reversed the trial judge's ruling and reinstated the arbitration award. The majority held that the arbitrator's "interpretation of the collective bargaining agreement was 'reasonably debatable'

given the actual text of the Agreement and fundamental principles of construction." The panel reasoned that if the parties intended to permit an uncompensated ten-minute muster they would have used the same language as used with respect to training time and that the arbitrator's view was at least "plausible and reasonably debatable."

The dissent echoed the rationale of the trial judge, explaining that the Agreement contains two schemes of compensation: the normal work day at straight-time rates and additional work at overtime rates. According to the dissent, by specifically barring overtime pay for the ten-minute early muster, which "would otherwise constitute payable overtime," the Agreement unambiguously precludes any compensation for that additional time. Accordingly, the dissent concluded that the arbitrator's interpretation was not "reasonably debatable." The City appeals as of right. *R.* 2:2–1(a)(2).

## II.

Before us, the City argues that the phrase "no overtime shall be paid" should end the inquiry. According to the City, because the ten-minute muster is overtime, the arbitrator's reading of the Agreement to permit straight-time compensation is not reasonably debatable.

PBA counters that the arbitrator properly considered the contract as a whole rather than confining himself to an isolated contractual provision and that although other interpretations are possible, the arbitrator's interpretation is reasonably debatable and should be upheld.

## III.

Courts have engaged in an extremely deferential review when a party to a collective bargaining agreement has sought to vacate an arbitrator's award. The well-established standard, most recently reaffirmed in *Linden Board of Education v. Linden*

*Education Association ex rel. Mizichko,* 202 *N.J.* 268, 997 *A.*2d 185 (2010), is that "an arbitrator's award will be confirmed 'so long as the award is reasonably debatable.'" 202 *N.J.* at 276, 997 *A.*2d 185 (quoting *Middletown Twp. PBA Local 124 v. Twp. of Middletown,* 193 *N.J.* 1, 11, 935 *A.*2d 516 (2007)).

That high level of deference springs from the strong public policy favoring "the use of arbitration to resolve labor-management disputes." *Id.* at 275–76, 997 *A.*2d 185 (quoting *N.J. Tpk. Auth. v. Local 196, I.F.P.T.E.,* 190 *N.J.* 283, 291, 920 *A.*2d 88 (2007)). Indeed, arbitration should be a fast and inexpensive way to achieve final resolution of such disputes and not merely "a way-station on route to the courthouse." *Id.* at 276, 997 *A.*2d 185 (quoting *State, Office of Emp. Relations v. Commc'ns Workers,* 154 *N.J.* 98, 111, 711 *A.*2d 300 (1998)).

Moreover, where a collective bargaining agreement provides for binding arbitration, "it is the arbitrator's construction that is bargained for," and not a court's construction. *Ibid.* (quoting *Local No. 153, Office & Prof'l Employees Int'l Union v. Trust Co. of N.J.,* 105 *N.J.* 442, 452, 522 *A.*2d 992 (1987)). "[S]o far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *United Steelworkers v. Enter. Wheel & Car Corp.,* 363 *U.S.* 593, 599, 80 *S.Ct.* 1358, 1362, 4 *L.Ed.*2d 1424, 1429 (1960).

That is not to suggest that an arbitrator's award is impervious to attack. Indeed, it is axiomatic that an arbitrator's "award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." *Id.* at 597, 80 *S.Ct.* at 1361, 4 *L.Ed.*2d at 1428.

Thus, our courts have vacated arbitration awards as not reasonably debatable when arbitrators have, for example, added new terms to an agreement or ignored its clear language. *See, e.g., Cnty. Coll. of Morris Staff Ass'n v. Cnty. Coll. of Morris,* 100 *N.J.*

383, 397–98, 495 A.2d 865 (1985) (declining to sustain arbitration award which declared unambiguous meaning of clause and interpreted it to contrary by adding extra term); *City Ass'n of Supervisors & Adm'rs v. State Operated Sch. Dist.*, 311 N.J.Super. 300, 312, 709 A.2d 1328 (App.Div.1998) (rejecting arbitration award which relied on past practices and "ignor[ed] the clear language of the agreement"); *PBA Local 160 v. Twp. of N. Brunswick*, 272 N.J.Super. 467, 475, 640 A.2d 341 (App.Div.) (overturning arbitration award that disregarded explicit term of negotiated agreement), *certif. denied*, 138 N.J. 262, 649 A.2d 1283 (1994); *see also Beaird Indus., Inc. v. Local 2297, Int'l Union*, 404 F.3d 942, 946–47 (5th Cir.2005) (overturning arbitration award in which arbitrator balanced parties' interests instead of applying contract language).

Although arbitrators may not look beyond the four corners of a contract to alter unambiguous language, where a term is not defined, it may be necessary for an "arbitrator to fill in the gap and give meaning to that term." *Linden Bd. of Educ., supra*, 202 N.J. at 277, 997 A.2d 185. Furthermore, an arbitrator may "weav[e] together" all those provisions that bear on the relevant question in coming to a final conclusion. *N.J. Transit Bus Operations, Inc. v. Amalgamated Transit Union*, 187 N.J. 546, 555, 902 A.2d 209 (2006). When that occurs, even if the arbitrator's decision appears to conflict with the direct language of one clause of an agreement, so long as the contract, as a whole, supports the arbitrator's interpretation, the award will be upheld. *See, e.g., ibid.* (upholding arbitration award interpreting agreement as whole, where, in isolation, one provision might appear to contrary); *see also Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1132–33 (3d Cir.1969) (noting unambiguous clause may become ambiguous in light of contract as whole and particular facts presented).

## IV.

Applying those standards, we are satisfied that the arbitrator's interpretation of the Agreement is plausible and, thus, rea-

sonably debatable. In ruling, the arbitrator looked to the Agreement as an integrated whole and wove together its relevant provisions to ascertain how the overtime compensation clause should be interpreted. *See N.J. Transit Bus Operations, supra,* 187 *N.J.* at 555, 902 *A.*2d 209. Included in his analysis was the structure of the Agreement, the need for a clear statement to overcome the presumption that all work is to be compensated, and the contrasting language of a provision that clearly eliminated all entitlement to compensation at any rate ("no additional compensation"). He said:

The framers of the Agreement were not novices to collective negotiations. They were skilled hands who negotiated intelligently and alertly to reach a comprehensive agreement. Appendix B references that employees would attend training beyond their regular hours of work without additional compensation. Section 8.03 references that they will not be paid overtime for the ten minute muster. If the parties wanted to specifically *exclude any and all payment for that ten minute period* they certainly were free to do so. (emphasis supplied)[.] The fact that they did not is not a glaring omission or any type of omission. It simply is that the parties only addressed that overtime would not be paid during that period of time. It is difficult for me to accept the fact that police officers and night shift detectives would be required to work beyond their normal tour of duty without compensation unless specifically delineated in the Agreement. To that end when the parties referenced the training in Appendix B, they specifically agreed to the amount of training and that there *would be no* additional compensation. (emphasis supplied)[.] They agreed that Officers would attend those training sessions without straight[-]time or overtime compensation. They never referenced that for straight-time compensation within the ten minute muster period.

The unmistakable intent of the parties in Article 8.03 is that overtime will not be paid for those ten minutes in question. That language is clear and unambiguous. The parties specifically referenced overtime compensation, and any alternative argument by the City must be set aside. It is axiomatic in contract construction that to expressly exclude only overtime payment for the ten minute muster period is to expressly allow for straight-time payment for those ten minutes.

That is a justifiable interpretation of the Agreement. *See Kearny PBA Local # 21 v. Town of Kearny,* 81 *N.J.* 208, 223–24, 405 *A.*2d 393 (1979) (constructions are reasonably debatable if they are "justifiable" or "fully supportable in the record").

Indeed, the language of the Agreement plainly supports the arbitrator's interpretation. Appendix B declares that "no additional compensation" shall be paid for training outside normal working hours. In contrast, Section 8.03 provides that "no over-

time shall be paid" for the ten-minute period before a shift begins. Like the arbitrator, we presume that the choice of different words signifies a different intention. *See Taracorp, Inc. v. NL Indus., Inc.*, 73 *F.*3d 738, 744 (7th Cir.1996) (holding where parties to same contract use different language to address parallel issues "it is reasonable to infer that they intend this language to mean different things"); *see also 2 Farnsworth on Contracts* § 7.11, at 284 n. 12 (2d ed. 1998). One clear meaning that can be ascribed to the differences in language is that the parties agreed that there would be no compensation whatsoever for training outside normal work hours, but that the straight-time rate of compensation would be available for the first ten minutes of muster. That interpretation essentially reads the language "no overtime shall be paid" in Section 8.03 as a reference to the overtime "rate" established in Section 8.01 and thus finds support in the Agreement itself.

■ That is not to suggest that the City's interpretation is not a viable one. Nor is it a conclusion that the arbitrator's interpretation is the best one. That is not the standard. What is required is that the arbitrator's interpretation finds support in the Agreement, and it does.

■ Here, the two parties, bargaining fairly at arm's length, determined that a mutually-selected, neutral arbitrator would interpret their Agreement in the event of a dispute. Because "it is the arbitrator's construction that is bargained for," we will not disturb that construction merely because we perceive that there is an arguably better view. *Linden Bd. of Educ., supra*, 202 *N.J.* at 276, 997 *A.*2d 185 (quoting *Local No. 153, supra*, 105 *N.J.* at 452, 522 *A.*2d 992). Our dissenting colleagues have rendered lip service to that fundamental labor law principle and then discarded it. In determining that Appendix B offers "little insight" into the parties' intentions, that it cannot affect the "straightforward" language of Section 8.03, and in effectively interpreting the Agreement as if it were frozen in time as of 1985 and not renegotiated thereafter, they have substituted their judgment for that of the arbitrator to whom the resolution of this matter was committed.

Here, the arbitrator engaged in the normal mode of contract interpretation and did not construe the terms or provisions in a way that the language cannot bear. Given our standard of review, it necessarily follows, as the Appellate Division concluded, that his construction was reasonably debatable and should be upheld.

## V.

The judgment of the Appellate Division is affirmed. The matter is remanded to the trial court for confirmation of the arbitration award.

Chief Justice RABNER, dissenting.

This Court has held on many occasions that an arbitrator's award will be confirmed as long as it is "reasonably debatable." *See, e.g., Linden Bd. of Educ. v. Linden Educ. Ass'n,* 202 *N.J.* 268, 276, 997 *A.*2d 185 (2010) (citation omitted); *Middleton Twp. PBA Local 124 v. Twp. of Middletown,* 193 *N.J.* 1, 11, 935 *A.*2d 516 (2007); *N.J. Tpk. Auth. v. Local 196, I.F.P.T.E.,* 190 *N.J.* 283, 292, 920 *A.*2d 88 (2007). Today, the arbitration award under review effectively inserted a new term into the parties' negotiated agreement. Because the arbitrator exceeded his authority in making that decision, the award cannot be sustained. I, therefore, respectfully dissent.

The appeal in this case stems from the arbitrator's resolution of a dispute about the terms of a collective bargaining agreement (Agreement). The parties disagreed over whether Trenton police officers were to be compensated for up to ten minutes of muster time before the start of their normal shift. The conflict was not about the right to compensation in general for muster or roll call; the dispute centered around whether the extra time was compensable in light of specific language in the parties' Agreement.

In the fall of 2006, Trenton's Police Director and Acting Director announced that roll calls were to start ten minutes before each scheduled shift. Relying on a provision in the Agreement, the City did not plan to pay additional compensation for that time.

The Policemen's Benevolent Association, Local No. 11(PBA) filed a grievance. After a hearing, an arbitrator concluded that straight-time pay applied to the ten-minute period for muster—even though no language in the Agreement supports that determination. By ruling in that way, the arbitrator, in effect, injected a new term into the parties' contract. As a result, the arbitrator's award cannot withstand review under the "reasonably debatable" standard.

A straightforward reading of the Agreement reveals why. Article VIII explicitly covers "Compensation for Overtime." It contains two sections relevant to this grievance: 8.01 and 8.03. There is no dispute about the language or meaning of Section 8.01. It requires that "work for any periods in excess of the normal hours of employment . . . shall be paid at the rate of time and one-half . . . for all such overtime."

Instead, the principal focus of this appeal is on the meaning of Section 8.03, which requires members to report for muster before and after their normal hours of employment and addresses how that time is to be compensated. The Section reads as follows:

[1] It is recognized that employees may be required for the purpose of muster at the commencement of a tour to report in advance of the tour starting time and for the purpose of report making at the end of a tour to remain at the termination of [a] tour. [2][i] In accordance with this recognition, no overtime shall be paid for a ten minute period prior to the commencement of a tour, or for a ten minute period at the termination of a tour, [ii] but in the event an employee is required to report earlier than ten minutes prior to the commencement of a tour or to remain beyond ten minutes after the end of a tour, the employee shall be paid the overtime rate for all time worked in excess of, the work day of eight consecutive hours. [Bracketed numbering added.]

The starting point for any analysis is the plain language of the Section, animated in this case by careful consideration of the order in which the words and phrases appear. The first sentence sets forth a basic requirement: employees may be called on to report for muster beyond their normal working hours. Had Section 8.03 stopped there, the *only* rate of pay for muster would have been the overtime rate established in Section 8.01. As counsel for the PBA properly conceded at oral argument, *straight pay could not*

*apply.* In light of the clear language in Section 8.01, any time for muster beyond normal "the normal hours of employment" would have necessarily been treated and paid as overtime.

What, then, does the second sentence of Section 8.03 accomplish? Its first part, labeled 2(i) above, directly states that "no overtime shall be paid" for ten-minute muster periods before or after a tour. In other words, by agreement of the parties, the second sentence expressly extinguished the only rate of pay available for muster for periods of up to ten minutes. The Agreement thus eliminated compensation for short periods of muster.

The arbitrator, though, interpreted the above language to require non-existent straight-time pay for short muster periods. No specific basis in the text of the Agreement supports that conclusion. Indeed, nothing in the contract provides for overtime at straight-time rates in any context. The arbitrator, in effect, improperly rewrote the parties' agreement and thereby exceeded his authority. *See Cnty. Coll. of Morris Staff Ass'n v. Cnty. Coll. of Morris,* 100 *N.J.* 383, 391, 495 *A.*2d 865 (1985) ("[A]n arbitrator may not disregard the terms of the parties' agreement, nor may he rewrite the contract for the parties.") (citations omitted); *In re Arbitration Between Grover & Universal Underwriters Ins. Co.,* 80 *N.J.* 221, 230–31, 403 *A.*2d 448 (1979) (same).

The remainder of the second sentence of Section 8.03, labeled 2(ii) above, reinforces the conclusion that no compensation is due for short periods of muster. The second half of that sentence declares that if muster exceeds a ten-minute period, all time worked in excess of a full day "shall be paid the overtime rate." That directive reinstates overtime for all time spent at muster, but only in the circumstances defined. No comparable language affixes straight-time or any other pay to shorter periods.

Could the parties have chosen different—even better—language to express their agreement? That is true in many situations. But it does not alter the plain construction and meaning of Section 8.03 as drafted.

The arbitrator looked to another part of the Agreement to justify the award. He cited language in Appendix B which addressed additional training hours: "Because the new schedule requires fewer weekly hours worked by members and does not provide sufficient manpower to allow training during normal work hours, members will be required to report for certain training outside normal working hours at *no additional compensation.*" (emphasis added). According to the arbitrator, because the parties could have used the above underscored language in Section 8.03 to avoid straight-time pay for ten minutes of muster, their failure to do so meant that they did not intend to exclude straight-time wages for short muster periods.

As a general rule, it is entirely reasonable to consider the contract as a whole, *see N.J. Transit Bus Operations, Inc. v. Amalgamated Transit Union,* 187 *N.J.* 546, 555, 902 *A.*2d 209 (2006), but that approach does not help in this case for two reasons. First, Appendix B was added ten years after Section 8.03 went into effect. Viewed in that light, it offers little insight into what the parties intended when they wrote the muster provision in 1985. Indeed, would the arbitrator's award have been different if a challenge had been brought before Appendix B was drafted? Second, the language in Appendix B cannot inject ambiguity into otherwise straightforward language in Section 8.03; nor can it create a right to straight-time pay for muster.

I agree with the majority's recitation of the basic legal standards regarding arbitration. Arbitration awards must not be lightly overturned. Both statutory and case law set an appropriately high threshold for vacating them. That approach is designed to foster the use of arbitration to resolve labor-management disputes. *Linden Bd. of Educ., supra,* 202 *N.J.* at 275–76, 997 *A.*2d 185 (citations omitted); *N.J. Transit, supra,* 187 *N.J.* at 553–54, 902 *A.*2d 209. It also reflects the deference due to arbitrators, whose interpretation the parties have bargained for through the collective bargaining process. *Linden Bd. of Educ., supra,* 202 *N.J.* at 276, 997 *A.*2d 185; *Local No. 153, Office &*

*Prof'l Employees Int'l Union v. Trust Co. of N.J.*, 105 *N.J.* 442, 452, 522 *A.*2d 992 (1987) (citation omitted). Nonetheless, it is well settled that

> an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.
>
> [*United Steelworkers v. Enter. Wheel & Car Corp.*, 363 *U.S.* 593, 597, 80 *S.Ct.* 1358, 1361, 4 *L.Ed.*2d 1424, 1428 (1960).]

Under New Jersey law, the award of an arbitrator reviewing a collectively negotiated agreement must be enforced if the arbitrator's interpretation of the contract is "reasonably debatable." *Linden Bd. of Educ., supra*, 202 *N.J.* at 276, 997 *A.*2d 185 (citation omitted); *Middleton Twp. PBA Local 124, supra*, 193 *N.J.* at 11, 935 *A.*2d 516; *N.J. Transit, supra*, 187 *N.J.* at 548, 902 *A.*2d 209. That standard requires "that the arbitrator's choice be examined to determine whether it was justifiable based on a reasonable interpretation of the contractual language." *N.J. Transit, supra*, 187 *N.J.* at 555, 902 *A.*2d 209 (citing *Kearny PBA Local # 21 v. Town of Kearny*, 81 *N.J.* 208, 220–21, 405 *A.*2d 393 (1979)).

Arbitrators who add terms to the actual language of a contract, though, violate their authority in a manner that requires their award to be vacated. *See Cnty. Coll. of Morris, supra*, 100 *N.J.* at 391, 397–98, 495 *A.*2d 865 (rejecting award made by "arbitrator [who] exceeded his authority by adding a new term to the contract"); *see also PBA Local 160 v. Twp. of N. Brunswick*, 272 *N.J.Super.* 467, 474, 640 *A.*2d 341 (App.Div.), *certif. denied*, 138 *N.J.* 262, 649 *A.*2d 1283 (1994). Likewise, an award that ignores the clear language of a contract cannot be sustained. *See State, Office of Employee Rel. v. Commc'ns Workers*, 154 *N.J.* 98, 112, 711 *A.*2d 300 (1998) ("Arbitrators also exceed their authority by disregarding the terms of the parties' agreement." (citing *PBA Local 160, supra*, 272 *N.J.Super.* at 474, 640 *A.*2d 341)); *see also City Ass'n of Supervisors & Adm'rs v. State Operated Sch. Dist.*, 311 *N.J.Super.* 300, 312, 709 *A.*2d 1328 (App.Div.1998); *Local 462,*

*Int'l Bhd. of Teamsters v. Charles Schaefer & Sons, Inc.,* 223 *N.J.Super.* 520, 528–29, 539 *A.*2d 295 (App.Div.1988).

In this case, as both the trial court and the dissenting member of the appellate panel found, the arbitrator's award is contrary to the plain language of the Agreement. Instead of remaining faithful to the Agreement the parties struck, the arbitrator effectively rewrote their contract and created a straight-time rate of pay for short periods of muster. By doing that, the arbitrator so exceeded the proper scope of his authority that the award cannot be upheld.

I, therefore, respectfully dissent.

*For affirmance and remandment*—Justices LONG, LaVECCHIA, ALBIN and STERN—4.

*For reversal*—Chief Justice RABNER and Justices RIVERA-SOTO and HOENS—3.