```
                    NOT FOR PUBLICATION WITHOUT THE
                    APPROVAL OF THE APPELLATE DIVISION
    This opinion shall not "constitute precedent or be binding upon any court."
     Although it is posted on the internet, this opinion is binding only on the
       parties in the case and its use in other cases is limited. R. 1:36-3.
```

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1470-16T1

CITY OF NEWARK,

    Plaintiff-Appellant,

v.

SEIU LOCAL 617,

    Defendant-Respondent.

_____

Argued August 14, 2018 — Decided September 4, 2018

Before Judges Messano and Geiger.

On appeal from Superior Court of New Jersey, Chancery Division, Essex County, Docket No. C-000218-15.

Cheyne R. Scott argued the cause for appellant (Chasan Lamparello Mallon & Cappuzzo, PC, attorneys; Cindy Nan Vogelman, of counsel and on the briefs; Qing H. Guo, on the brief).

William P. Hannan argued the cause for respondent (Oxfeld Cohen, PC, attorneys; William P. Hannan, of counsel and on the brief).

PER CURIAM

    Plaintiff City of Newark appeals from the trial court's order confirming an arbitration award. Employee Marvin Harrison

received a three-day suspension for insubordination. Defendant Service Employees International Union Local 617 (the Union) filed a grievance on his behalf. The dispute proceeded to final and binding arbitration for determination of the following issues: "Was there just cause for the suspension of [Harrison] for three (3) days? If not, what shall be the remedy?" The arbitrator rendered an award sustaining the grievance, reducing the discipline to a corrective conference, and restoring the three days of lost compensation, finding Newark had not carried its burden of proving Harrison knowingly and willfully engaged in an act of insubordination. We reverse.

I.

The Union represents blue collar, non-supervisory workers employed by Newark. Harrison has been employed by Newark as a garbage truck driver for seventeen years. Newark and the Union entered into a collective bargaining agreement (the Agreement) effective January 1, 2012 to December 31, 2014. Under Article XXIX of the Agreement, Newark retained and reserved, without limitation, the right "[t]o suspend, demote, discharge or take other disciplinary action for good and just cause according to the law." However, Article VIII requires Newark to apply progressive discipline unless the misconduct falls within certain categories, including insubordination. Pertinent to this appeal, it provides:

The City of NEWARK shall follow a remedial system of progressive discipline in an attempt to bring employee's work performance and/or conduct up to a satisfactory level. The steps of the progressive discipline shall include:

(a) <u>Corrective Conference</u> — the Division Manager or his/her designee will discuss any work performance problem or misconduct with the employee . . . .

(b) <u>Written Reprimand</u> — If the employee fails to improve his/her work performance within a reasonable time established at the corrective conference, or if the employee violates the same or another policy, rule or regulation, the Division Manager shall issue a written reprimand. . . .

. . . .

(c) A department Director may bypass the progressive discipline system in the case(s) of acts of violence, criminal intent, bodily harm, or insubordination. The parties agree that if management abuses the infraction of insubordination, the Union reserves the right to invoke the grievance procedures.

The Agreement does not define "insubordination" or "good and just cause."

Article VII sets forth the five-step procedure for resolving grievances, culminating in arbitration. It imposes the following limitations on the arbitrator:

The arbitrator shall be bound by the provisions of this Agreement and restricted to the application of the facts involved in the grievance as presented to him [or] her. The arbitrator shall not have the authority to add to, modify, detract from or alter in any way the provisions of the Agreement or any amendment or supplement thereto.

The arbitrator conducted an evidential hearing on July 1, 2015 and found the following facts.[1] On December 3, 2014, Harrison was assigned to perform bulk trash pick-ups. After completing his normal route, but before the end of his shift, Harrison was commanded by his supervisor, William Lane, to perform certain additional bulk trash pick-ups. Harrison refused and left the work site. As a result of his refusal, Harrison was suspended for three days for insubordination. The Union grieved the suspension, which ultimately proceeded to final and binding arbitration.

Newark argued Harrison's supervisor directed him to do the additional trash pick-ups but he refused, claiming employees of a contractor, who should have done the pick-ups, were not doing their job. Newark contended Harrison's refusal constituted insubordination and, therefore, progressive discipline was not required. Newark also contended the three-day suspension was reasonable discipline for Harrison's insubordination.

---

[1] The record does not include a transcript of the arbitration hearing.

The union claimed Harrison was asked to perform extra duties at the end of his shift when he still had to transport his load to the landfill and refuel at a second location, further extending his anticipated overtime. The Union argued since Harrison was not warned about the consequences if he refused to perform the extra work, he could not be disciplined for insubordination. The Union also argued the overtime was not mandatory because Newark did not assign the overtime properly. Finally, the Union argued Newark failed to offer an alternative accommodation to Harrison to reduce his overtime on December 3, 2014.

In his written opinion and award, the arbitrator sustained the grievance, engaging in the following analysis:

> It is well accepted that an employee's refusal to obey a supervisor's instructions, absent a threat to his health or safety, may subject an employee to discipline for insubordination. However, before a refusal to obey rises to the level of insubordination, arbitrators have long-held that it must be clear that the supervisor's directive was in the nature of a command and that the employee had been warned that his refusal will subject him to discipline. Therefore, for an act of insubordination to occur, an employee must be on notice of the consequences of his refusal to follow the supervisor's orders.
>
> This methodology is consistent with the parties['] Agreement which places insubordination in the same category as acts of violence, criminal intent, and bodily harm, none of which require progressive discipline. Unlike insubordination, the other categories

of misconduct are, on their face so serious that no notice to an employee is necessary to advise the employee that such misconduct will result in serious disciplinary consequences without prior resort to progressive discipline. On the other hand, a failure or refusal to obey an order does not, on its face, rise to the level of insubordination unless an employee is fully apprised that serious disciplinary consequences — beyond progressive discipline — will occur if the employee's behavior continues.

In the instant matter, the Union does not contend that Mr. Lane failed to issue a clear directive to [Harrison]. Indeed, [Harrison's] response to the order — "no" — verifies that [Harrison] understood that a command had been issued. Rather, the Union contends that since the order to perform the additional work violated the overtime distribution rules, [Harrison] was not obligated to comply. I disagree. Even if [Harrison] believed that the instructions violated the overtime distribution rules of the Agreement, he nevertheless had to comply since there was no risk to his health or safety. It is well accepted that the employee must obey the supervisor's orders and utilize the grievance procedure for relief. This is often referred to as the "obey now-grieve later" rule.

Once, however, Mr. Lane commanded Mr. Harrison to perform the added work, and he refused, before Mr. Harrison can be disciplined for insubordination, it was incumbent on Mr. Lane to follow-up by advising Mr. Harrison of the disciplinary consequences of his continued refusal to perform the assignment. This, he failed to do. Indeed, on cross-examination, Mr. Lane admitted that he never threatened Mr. Harrison after he told Mr. Lane that he would not do so as he was directed. Thus, Mr. Lane did not provide Mr. Harrison with the opportunity to fully

6

appreciate the probable consequences of his refusal or to reconsider his refusal to avoid such consequences. Accordingly, I find that the City has not carried its burden of proving that [Harrison] knowingly and willfully engaged in an act of insubordination.

Although he found Harrison was not advised of the disciplinary consequences of his continued refusal to perform the work assignment, the arbitrator determined Harrison should be disciplined in the form of a corrective conference, the first step under the progressive discipline system.

Newark filed this action to vacate the arbitration award, alleging the award was procured through undue means (count one) and the award resulted from the arbitrator exceeding his authority and disregarding the terms of the Agreement (count two). The Union counterclaimed to confirm and enforce the award. The parties filed cross-motions for summary judgment. Following oral argument on October 14, 2016, the motion judge rendered a preliminary decision on November 14, 2016, indicating he was inclined to vacate the award and remand to the arbitrator to conduct a just cause analysis.

In reaching that tentative conclusion, the judge stated the arbitrator "puts forth his own definition of insubordination which is a term of ordinary meaning," in which he adds a notice requirement, "which is not part of the definition," citing Ricci

v. Corporate Express of the East, Inc., 344 N.J. Super. 39, 45 (App. Div. 2001) and County College of Morris Staff Association v. County College of Morris Staff Association, 100 N.J. 383 (1985). The judge also stated, "the arbitration award needs to be vacated, because [the arbitrator] doesn't have the authority to . . . provide his own definition of a plain common term," "essentially adding a term to the contract that doesn't exist in the contract." The judge indicated he was going to vacate the award and remand the grievance to the arbitrator because the arbitrator did not address the just cause standard, express his reasons, or engage in any analysis.

In an oral decision rendered four days later, the judge reached a different result, granting summary judgment to the Union, confirming the award, and dismissing the complaint, concluding the court could not remand the matter to the arbitrator due to the passage of time. The judge reached this decision despite finding the arbitrator's conclusion that "for an act of insubordination to occur, an employee must be on notice of the consequences of his refusal to follow the supervisor's order" to be "in conflict with other parts of his decision."

After noting the arbitrator's opinion "is not one the [c]ourt would have issued" and that the arbitrator's just cause analysis "was not complete and thorough," the judge concluded the court did

not have the authority to overturn it because the opinion was "reasonably debatable." Although he sustained the award, the judge reiterated the arbitrator did "not have . . . the right to insert a term in the contract that the parties did not bargain for." This appeal followed.

Newark primarily argues the trial court erred by confirming the arbitration award even though the arbitrator exceeded his authority by imposing additional terms that were neither present in the Agreement nor agreed to by the parties. More specifically, Newark argues the arbitrator improperly required the application of progressive discipline for insubordination and adopted an improper definition of insubordination.

## II.

"The public policy of this State favors arbitration as a means of settling disputes that otherwise would be litigated in a court." Badiali v. N.J. Mfrs. Ins. Group, 220 N.J. 544, 556 (2015) (citing Cty. Coll. of Morris Staff, 100 N.J. at 390). "Consistent with the salutary purposes that arbitration [promotes] as a dispute-resolution mechanism" of labor-management issues, "courts grant arbitration awards considerable deference." Borough of E. Rutherford v. E. Rutherford PBA Local 275, 213 N.J. 190, 201 (2013). "[A]rbitration of public-sector labor disputes, in particular, 'should be a fast and inexpensive way to achieve final

resolution of such disputes.'" Ibid. (quoting Policemen's Benevolent Ass'n, Local No. 11 v. City of Trenton, 205 N.J. 422, 429 (2011)). "Thus, arbitration awards are given a wide berth, with limited bases for a court's interference." Ibid.

"We review the court's decision on a motion to vacate an arbitration award de novo." Bound Brook Bd. of Educ. v. Ciripompa, 442 N.J. Super. 515, 520 (App. Div. 2015) (citation omitted). However, "an arbitrator's award will be confirmed 'so long as the award is reasonably debatable.'" Policemen's Benevolent Ass'n, 205 N.J. at 428-29 (quoting Linden Bd. of Educ. v. Linden Educ. Ass'n., 202 N.J. 268, 276 (2010); see also Off. of Emp. Rels. v. Comms. Workers of Am., 154 N.J. 98, 112 (1998)).

Under the Arbitration Act, N.J.S.A. 2A:24-1 to -11, a court shall vacate an arbitration award:

> a. Where the award was procured by corruption, fraud or undue means;
>
> b. Where there was either evident partiality or corruption in the arbitrators, or any thereof;
>
> c. Where the arbitrators were guilty of misconduct . . . ; [or]
>
> d. Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.
>
> [N.J.S.A. 2A:24-8.]

"[U]ndue means" encompasses a situation in which the arbitrator has made a mistake of law, "whereas an arbitrator exceeds his or her 'authority by disregarding the terms of the parties' agreement.'" Borough of E. Rutherford, 213 N.J. at 203 (alteration in original) (quoting Off. of Emp. Rels., 154 N.J. at 111-12).

Whether the arbitrator exceeded his authority "entails a two-part inquiry: (1) whether the agreement authorized the award, and (2) whether the arbitrator's action is consistent with applicable law." Id. at 212 (citing Comms. Workers v. Monmouth Cty. Bd. of Soc. Servs., 96 N.J. 442, 451-53 (1984)).

"[A]n arbitrator may not disregard the terms of the parties' agreement, nor may he rewrite the contract for the parties." Cty. College of Morris, 100 N.J. at 391 (citing State v. State Troopers Fraternal Ass'n, 91 N.J. 464, 469 (1982)). Moreover, "the arbitrator may not contradict the express language of the contract." Linden Bd. of Educ., 202 N.J. at 276. "Thus, our courts have vacated arbitration awards as not reasonably debatable when arbitrators have, for example, added new terms to an agreement or ignored its clear language." Policemen's Benevolent Ass'n, 205 N.J. at 429-30 (citing Cty. Coll. of Morris, 100 N.J. at 397-98).

III.

Newark argues the arbitrator exceeded his authority by: (1) imposing additional terms to the collective bargaining agreement that

were neither present in agreement nor agreed to by the parties; and (2) by converting the issue of just cause for the three-day suspension to an issue regarding the definition of insubordination.

We first examine if the arbitrator exceeded his authority by disregarding the terms of the parties' agreement.

Newark imposed minor discipline in the form of a three-day suspension. See N.J.A.C. 4A:2-3.1 ("Minor discipline is a formal reprimand or a suspension or fine of five working days or less."). The Agreement did not require Newark to apply progressive discipline for insubordination.[2] Instead, Newark retained the right to impose major or minor discipline, up to and including termination, "for good and just cause." Thus, discipline for insubordination could be imposed without first undertaking a corrective conference or issuing a written reprimand.

Without citing any authority, the arbitrator concluded Newark had not proved Harrison knowingly and willfully engaged in an act of insubordination because Lane did not warn Harrison that his refusal to perform the assigned work would subject him to discipline. The

---

[2] The record before the trial court, but not the arbitrator, indicates Harrison had previously received a corrective conference and a written warning in September 2013. Because Newark did not contend it had applied progressive discipline before the arbitrator, and did not brief this issue on appeal, we consider it waived. See Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2018) (citing Gormley v. Wood El, 218 N.J. 72, 95 n.8 (2014); Dep't of Envtl. Prot. v. Alloway Twp., 438 N.J. Super. 501, 505 n.2 (App. Div. 2015)).

arbitrator ruled "for an act of insubordination to occur, an employee must be on notice of the consequences of his refusal to follow the supervisor's orders." Therefore, the employee must be "fully apprised that serious disciplinary consequences — beyond progressive discipline — will occur if the employee's behavior continues." The arbitrator exceeded his powers by engrafting these additional requirements.

"Insubordination" is not defined in the Agreement. Consequently, "we are obliged to accept its ordinary definition since it is not a technical term or word of art and there are no circumstances indicating that a different meaning was intended by the parties." Ricci, 344 N.J. Super. at 345 (citing Deerhurst Estates v. Meadow Homes, Inc., 64 N.J. Super. 134, 150 (App. Div. 1960)).

Insubordination has been defined as: "'a willful refusal of submission' to the authority of her superiors," Laba v. Newark Bd. of Educ., 23 N.J. 364, 385 (1957) (quoting Harrisonon v. State Bd. of Educ., 134 N.J.L. 502, 505 (Sup. Ct. 1946)); the "willful disregard of an employer's instructions," Black's Law Dictionary 802 (7th ed. 1999); or an "act of disobedience to proper authority," ibid. See also N.J.A.C. 12:17-10.5(a)(1). Insubordinate is defined as "[n]ot submitting to authority; disobedient; mutinous." Webster's Third New International Dictionary 1172 (1971). The ordinary meaning of insubordination does not include a requirement that the employer

advise the employee of the disciplinary consequences of his continued refusal to perform the work assignment.

As recognized by the arbitrator, "an employee's refusal to obey a supervisor's instructions, absent a threat to his health or safety, may subject an employee to discipline for insubordination." The Union does not contend Lane failed to issue a clear directive to Harrison. Harrison understood the order to perform the additional trash pick-ups. Harrison's response to the directive verified he understood a command had been issued. Harrison was obliged to comply with the directive since there was no risk to his health or safety. Pursuant to the "obey now-grieve later" rule, Harrison was required to obey Lane's order and utilize the grievance procedure for relief. Harrison refused to perform the added work and left the work site. By doing so, he was insubordinate. Newark was not required to engage in progressive discipline. There was good and just cause for the minor discipline imposed.

The Agreement did not require Newark to follow the remedial system of progressive discipline for acts of insubordination. Consequently, Newark was not required to first conduct a corrective conference or issue a written reprimand before suspending Harrison for insubordination. Accordingly, pursuant to this bargained-for provision, Newark was not required to "discuss any work performance problem or misconduct with the employee" during a corrective

conference before suspending Harrison.  As a member of the bargaining unit, Harrison had constructive notice of the terms of Article VIII.

"Where contracting parties have manifested their intentions by a written agreement, they are bound thereby and their intentions as so expressed must be enforced."  Bd. of Review v. Bogue Electric Co., 37 N.J. Super. 535, 539 (App. Div. 1955).  As a member of the bargaining unit, Harrison is legally bound by the terms of the Agreement.  Ibid. (citing Christiansen v. Local 680 Milk Drivers & Dairy Emps. of N.J., 126 N.J. Eq. 508, 512 (Ch. Div. 1940)).

"[A]n arbitrator's 'award is legitimate only so long as it draws its essence from the collective bargaining agreement.  When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.'"  Policemen's Benevolent Ass'n, 205 N.J. at 429 (quoting United Steelworkers v. Enter. Wheel & Car Corp., 363 U.S. 593, 597 (1960)).  "Arbitrators who add terms to the actual language of a contract exceed their authority in a manner that requires their award be vacated."  Id. at 437 (Rabner, C.J., dissenting) (citing Cty. Coll. of Morris, 100 N.J. at 397-98 (vacating award made by "arbitrator [who] exceeded his authority by adding a new term to the contract"); PBA Local 160 v. Twp. of N. Brunswick, 272 N.J. Super. 467, 474 (App. Div. 1994)).  "Likewise, an award that ignores the clear language of a contract cannot be sustained."  Ibid. (quoting Office of Emp. Rels., 154 N.J.

15                                          A-1470-16T1

at 112 (stating arbitrators "exceed their authority by disregarding the terms of the parties' agreement"); see also Local 462, Int'l Bhd. of Teamsters v. Charles Schaefer & Sons, Inc., 223 N.J. Super. 520, 528-29 (App. Div. 1988)).  In particular, arbitrators are not "free to impose a progressive disciplinary scheme upon the parties where the contract did not so provide."  Local 462, 23 N.J. Super. at 528.  "Thus, our courts have vacated arbitration awards . . . when arbitrators have . . . added new terms to an agreement or ignored its clear language."  Policemen's Benevolent Ass'n, 205 N.J. at 429 (citations omitted).

Applying those standards, the arbitrator's interpretation of the Agreement is not reasonably debatable.  The arbitrator was bound by the provisions of the Agreement and did not have the authority to add to or modify its terms.  Because the arbitrator exceeded his authority by engrafting additional warning requirements contrary to the ordinary meaning of the express terms of the Agreement, effectively requiring Newark to apply progressive discipline, the award cannot be upheld.  Accordingly, we vacate the award.

Reversed and remanded to the Law Division for entry of an order vacating the arbitration award, reinstating the three-day suspension, and dismissing the counterclaim.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1470-16T1