**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4367-17T2

MIDDLESEX EDUCATION
ASSOCIATION,

      Plaintiff-Appellant,

v.

MIDDLESEX BOARD OF
EDUCATION,

      Defendant-Respondent.

_____

Argued May 30, 2019 – Decided June 25, 2019

Before Judges Koblitz, Currier and Mayer.

On appeal from the Superior Court of New Jersey, Chancery Division, Middlesex County, Docket No. C-000030-18.

David J. DeFillippo argued the cause for appellant (Detzky, Hunter & DeFillippo, LLC, attorneys; David J. DeFillippo, of counsel and on the briefs).

Anthony P. Sciarrillo argued the cause for respondent (Sciarrillo, Cornell, Merlino, McKeever & Osborne,

LLC, attorneys; Anthony P. Sciarrillo, of counsel and on the brief; Paul E. Griggs, on the brief).

PER CURIAM

Plaintiff Middlesex Education Association (Association) appeals from a May 4, 2018 order denying its order to show cause (OTSC) to vacate a December 8, 2017 arbitration award and dismissing its complaint. We affirm.

The Association submitted two grievances, claiming respondent Middlesex Board of Education (Board) assigned some teachers to excessive duties and posts during the 2015-2016 and 2016-2017 school years in violation of their collective negotiations agreement (CNA). The Association filed a demand for arbitration with the New Jersey Public Relations Commission (PERC) regarding the grievances. The issue presented to the arbitrator was whether the Board assigned duties in excess of the CNA for the 2015-2016 and 2016-2017 school years.

Three provisions in the applicable CNA are pertinent to this appeal. The first is Section 3.3.6(c) of the CNA, which sets forth the scope of arbitration:

> The arbitrator shall be limited to the issues submitted and will not add to or subtract from or modify the terms of the [CNA]. The arbitrator shall be without power or authority to make any decision contrary to or inconsistent with, or modifying or varying in any way the terms of [the CNA] or applicable law or rules or regulations having the force or effect of law. The

arbitrator's decision shall not usurp the functions or powers of the Board as provided by statute or be inconsistent with the provisions of [the CNA].

The second provision relevant to this appeal is Section 6.1.2(e) of the CNA. This section provides that "[p]reschool to Grade 5 teachers and Grade 6-12 teachers who teach six (6) periods per day will be assigned no more than two (2) duties per week."

The third provision implicated in this appeal is Section 6.1.1(c) of the CNA. This section provides:

> Teachers are required to be in their respective classrooms or at their assigned posts fifteen (15) minutes before the opening of the school day, and at least five (5) minutes before the opening of the afternoon session, and shall remain in their classrooms thirty (30) minutes after the close of the students' day, except if the teacher is on a duty assignment.

The CNA expressly limits teachers with full teaching loads to the assignment of no more than two duties per week. There is no provision in the CNA limiting the number of posts per week that may be assigned to a teacher.

Duty assignments are described as supervisory tasks or functions outside of the classroom, such as "escorting, monitoring, supervising and assisting students." Duties are usually during periods designated for "recess, in-school

3

suspension, and lunch." The duration of a duty assignment is typically thirty to forty minutes.

Post assignments are designated locations where teachers are dispatched to oversee students arriving and departing from school, or travelling the hallways between classes and lunch periods. Post assignments are ten to twenty minutes in duration.

During the arbitration hearing, the arbitrator heard testimony from the Association's witnesses, two school principals, and the Board's Superintendent. The Association also presented charts of teachers who taught six class periods per day who also had duty or post assignments. Based on these charts, the Association claimed teachers were improperly assigned to more than the CNA's limit of two duties per week.

The witnesses from the Board explained the differences between duties and posts. According to the Board's witnesses, historically, teachers are assigned to both duties and posts, although not all teachers have had both duties and posts. One principal who testified for the Board described a post as a location. He further explained a duty imposes greater responsibility on a teacher than a post. The same principal also testified posts are no more than fifteen minutes in length, while duties range from twenty-six to forty minutes in length.

 A-4367-17T2

The other principal who testified for the Board explained that the responsibilities associated with posts are less than those attendant to duties. He noted posts last ten minutes while duties last thirty minutes.

According to the testimony from the Board's Superintendent, a post is defined as a location. While posts are fifteen minutes or less in duration, the Superintendent described duties as full-class periods that include recess, lunch, and in-school suspension. The Superintendent noted teachers who were not assigned homeroom classes were assigned posts.

After closing the record, in a December 8, 2017 written decision, the arbitrator determined the CNA failed to specify whether the limitation imposed on duty assignments also applied to post assignments and therefore the CNA was ambiguous. Based on finding an ambiguity in the CNA, the arbitrator analyzed the parties' past conduct to define duties and posts.

The arbitrator compared posts and duties, noting duties involved more "record-keeping . . . and require[d] teachers to circulate among students to better monitor them, as in recess and lunch duty." She also found the parties "consistently interpreted duty assignments to not include posts . . . ." She explained the distinction "makes sense" because teachers without homeroom assignments are assigned to posts, and both assignments have the same ten to

fifteen minute duration. Moreover, because teachers given duty assignments receive additional compensation, the arbitrator reasoned that if teachers assigned to posts were given additional compensation similar to duty assignments, there would be a "compensation inequity[,]" giving certain teachers a benefit not bargained for in the CNA.

The arbitrator concluded the parties had a "long-standing practice" of interpreting duties separately from posts. Since 1998, the language in the CNA regarding posts has remained the same. The Association signed successive CNAs after 1998 without requesting inclusion of a definition for posts. Based on the testimony and the parties' past practice, the arbitrator found the Association failed to prove the Board's assignment of teachers to duties and posts violated the CNA.

On February 22, 2018, the Association filed an OTSC and verified complaint in the Chancery Division of the Superior Court, seeking to vacate the arbitration award. The Association argued the award was procured by undue means. In addition, the Association asserted the arbitrator "imperfectly execut[ed]" her authority contrary to N.J.S.A. 2A:24-8.

The judge heard argument on the OTSC. The judge explained the Association failed to satisfy the statutory grounds for vacating the arbitration

award under N.J.S.A. 2A:24-8. In upholding the arbitrator's decision, the judge found "the arbitrator's ultimate conclusion must be maintained as it was not unfair or an unreasonable interpretation, and . . . the arbitrator's interpretation of the [CNA] more than satisfies the reasonably debatable standard . . . ." An order memorializing the judge's oral decision was entered on May 4, 2018.

On appeal, the Association argues the arbitrator's award was not reasonably debatable and was procured by undue means. In addition, the Association contends the CNA is unambiguous and the arbitrator improperly relied on the parties' past conduct to conclude duties and posts were functionally different.

We review a trial court's decision on a motion to vacate an arbitration award de novo. See Yarborough v. State Operated Sch. Dist. of City of Newark, 455 N.J. Super. 136, 139 (App. Div. 2018) (citing Minkowitz v. Israeli, 433 N.J. Super. 111, 136 (App. Div. 2013)). However, "[j]udicial review of an arbitration award is very limited." Bound Brook Bd. of Educ. v. Ciripompa, 228 N.J. 4, 11 (2017) (quoting Linden Bd. of Educ. v. Linden Educ. Ass'n ex rel. Mizichko, 202 N.J. 268, 276 (2010)). "The public policy of this State favors arbitration as a means of settling disputes that otherwise would be litigated in a court." Badiali v. N.J. Mfrs. Ins. Group, 220 N.J. 544, 556 (2015) (citing Cty. Coll. of Morris

Staff Ass'n v. Cty. Coll. of Morris, 100 N.J. 383, 390 (1985)).  "[T]o ensure finality, as well as to secure arbitration's speedy and inexpensive nature, there exists a strong preference for judicial confirmation of arbitration awards." Borough of E. Rutherford v. E. Rutherford PBA Local 275, 213 N.J. 190, 201 (2013) (alteration in original) (quoting Middletown Twp., PBA Local 124 v. Twp. of Middletown, 193 N.J. 1,10 (2007)).

We apply "an extremely deferential review when a party to a collective bargaining agreement has sought to vacate an arbitrator's award." Policemen's Benevolent Ass'n, Local No. 11 v. City of Trenton, 205 N.J. 422, 428 (2011). "In the public sector, an arbitrator's award will be confirmed 'so long as the award is reasonably debatable.'" Linden Bd. of Educ., 202 N.J. at 276 (quoting Middletown Twp. PBA Local 124, 193 N.J. at 11).  An award is "reasonably debatable" if it is "justifiable" or "fully supportable in the record." Policemen's Benevolent Ass'n, 205 N.J. at 431 (quoting Kearny PBA Local No. 21 v. Town of Kearny, 81 N.J. 208, 223-24 (1979)).

N.J.S.A. 2A:24-8 sets forth the grounds for vacating an arbitration award. A court must vacate an arbitration award:

> a. Where the award was procured by corruption, fraud or undue means;

b. Where there was either evident partiality or corruption in the arbitrators, or any thereof;

c. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause being shown therefor, or in refusing to hear evidence, pertinent and material to the controversy, or of any other misbehaviors prejudicial to the rights of any party; [or]

d. Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.

[N.J.S.A. 2A:24-8.]

The Association contends the arbitration award should be vacated in accordance with N.J.S.A. 2A:24-8 (a) and (d).

"'[U]ndue means' ordinarily encompasses a situation in which the arbitrator has made an acknowledged mistake of fact or law or a mistake that is apparent on the face of the record." Borough of E. Rutherford, 213 N.J. at 203 (alteration in original) (quoting N.J. Office of Emp. Relations v. Commc'ns Workers of Am., AFL-CIO, 154 N.J. 98, 111 (1998)).

An arbitrator exceeds her authority where she ignores "the clear and unambiguous language of the agreement . . . ." City Ass'n of Supervisors & Adm'rs v. State Operated Sch. Dist. of City of Newark, 311 N.J. Super. 300, 312 (App. Div. 1998). It is fundamental that, "an arbitrator may not disregard the

terms of the parties' agreement, nor may he rewrite the contract for the parties." Cty. Coll. of Morris, 100 N.J. at 391 (citation omitted). Moreover, "the arbitrator may not contradict the express language of the contract . . . ." Linden Bd. of Educ., 202 N.J. at 276.

"Although arbitrators may not look beyond the four corners of a contract to alter unambiguous language, where a term is not defined, it may be necessary for an 'arbitrator to fill in the gap and give meaning to that term.'" Policemen's Benevolent Ass'n, 205 N.J. at 430 (quoting Linden Bd. of Educ., 202 N.J. at 277). If contract terms are unspecific or vague, "extrinsic evidence may be used to shed light on the mutual understanding of the parties." Hall v. Bd. of Educ. of Twp. of Jefferson, 125 N.J. 299, 305 (1991). "The past practice of the contracting parties is entitled to 'great weight' in determining the meaning of ambiguous or doubtful contractual terms." Id. at 306 (citing Kennedy v. Westinghouse Elec. Corp., 16 N.J. 280, 294 (1954)).

Although the arbitrator is not free to contradict the express language of a contract, "an arbitrator may 'weav[e] together' all those provisions that bear on the relevant question in coming to a final conclusion." Policemen's Benevolent Ass'n, 205 N.J. at 430 (alteration in original) (quoting N.J. Transit Bus Operations, Inc. v. Amalgamated Transit Union, 187 N.J. at 546, 555 (2006)).

"[S]o long as the contract, as a whole, supports the arbitrator's interpretation, the award will be upheld." Ibid.

The parties disputed whether duties and posts were interchangeable terms. Because those terms were not defined in the CNA, the arbitrator had to examine the agreement as a whole and look to the parties' prior conduct to ascertain the meaning of the two terms. Nothing in the language of the CNA suggests duties and posts are interchangeable. The duration of time for a post assignment differs from the time allocated for a duty assignment. Duty assignments also impose greater responsibilities on a teacher compared to post assignments. Further, if duties and posts were indistinguishable, teachers would have to be compensated for post assignments and financial remuneration for post assignments is not contemplated in the CNA. The arbitrator's decision, finding the terms to be separate and distinct, was based on testimony from school officials and the past conduct of the parties. Thus, the arbitrator's decision is justifiable and fully supported by the record.

We are satisfied the arbitrator did not exceed her authority because the award did not add a new term to the CNA. The arbitrator adopted a definition of post, based on the past conduct of the parties, which was reasonably debatable. The arbitrator's award was legally sufficient and fully supported by

11

the evidence in the record. Thus, we discern no reason to disturb the trial court's ruling affirming the arbitrator's award.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4367-17T2