**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0370-19T3

ATLANTIC CITY BOARD OF
EDUCATION,

    Plaintiff-Respondent,

v.

ATLANTIC CITY EDUCATION
ASSOCIATION,

    Defendant-Appellant.

_____

Argued telephonically August 25, 2020 –
Decided September 14, 2020

Before Judges Geiger and Mitterhoff.

On appeal from Superior Court of New Jersey, Law
Division, Atlantic County, Docket No. L-2497-18.

Steven R. Cohen argued the cause for appellant
(Selikoff & Cohen, PA, attorneys; Steven R. Cohen, of
counsel and on the briefs; Hop T. Wechsler, on the
briefs).

Michael E. Riley argued the cause for respondent
(Riley & Riley, attorneys; Tracy L. Riley, on the brief).

PER CURIAM

Defendant Atlantic City Education Association (Association) appeals from a Law Division order vacating an arbitration award and holding that the Collective Negotiations Agreement (CNA or Agreement) between the Association and plaintiff Atlantic City Board of Education (Board) included the right to deduct dental insurance premium contributions from employees' salaries. For the reasons that follow, we reverse.

I.

We derive the following facts from the record. The Association is the sole and exclusive labor representative for certain school employees of plaintiff, including teaching staff and support personnel.

The prior CNA expired on June 30, 2016. The parties engaged in collective negotiations for a successor agreement until February 2017. On February 13, 2017, Association President Marcia Genova sent an email to Association members announcing a general meeting and ratification vote scheduled for February 28, 2017, allowing members to become familiar with State School Employee's Health Benefit Program (SEHBP) plans and related salary deductions. Two days later, President Genova sent a follow-up email to all twelve building representatives with an attached PowerPoint prepared by the

Board to be shared with members. The PowerPoint identified the amounts to be deducted from salaries for medical and dental insurance, based on the plans chosen by the member.

The ratification vote was to approve a proposed three-year CNA for the period July 1, 2016 through June 30, 2019. The membership ratified the CNA on February 28, 2017. The parties dispute whether the CNA authorized the Board to deduct dental insurance contributions from members' salaries.

Article XVI of the CNA governs health care insurance. Paragraph 16.1 provides:

> In accordance with applicable law, all employees, with the exception of those who "opt out," shall pay at least the legislated contribution requirements provided by P.L. 2011, c. 78 towards their health insurance premium which equates to Step 4 on the existing scale where it shall remain unless renegotiated at a later time.
>
> No employee's health care contribution shall be less than 1.5% of his or her base salary. The Board will assume the remaining costs for health benefits [with] co-pays of ten dollars ($10.00) and a deductible of two hundred dollars ($200.00) per individual and four hundred dollars ($400.00) per family. The prescription co-pay is fifteen dollars ($15.00) for branded drugs and five dollars ($5.00) for generic drugs. All mail order prescriptions shall be zero ($0.00) co-pay. The medical plan in existence as of June 30, 2016 shall remain in place for the 2016-2017 school year. Effective July 1, 2017 the coverage shall be available through the School

Employees' Health Benefits Program ("SHBP/SEHBP") for medical, prescription, dental and vision.

The CNA contains no other language addressing employee contributions to dental insurance premiums. Nor was any memorandum of agreement, side agreement, contribution rate summary, or PowerPoint pertaining to employee contribution to dental insurance premiums incorporated into or appended to the CNA.[1]

In July 2017 as to twelve-month employees and September 2017 as to ten-month employees, the Board began deducting a percentage of the insurance premiums for dental and vision health care from their salaries.[2] The amount of the deductions purportedly mirrored those contained in the Board's contract

---

[1] During oral argument before this court, the parties acknowledged that they did not enter into any such memorandum of agreement or side agreement. They further acknowledged there were no letters, emails, or other written communications confirming any verbal agreement regarding employee dental insurance contributions.

[2] The Association ultimately waived any claim regarding amounts deducted for vision care benefits, leaving the deduction for dental benefits as the sole issue.

proposal and the PowerPoint conveyed to the Association.[3]  The Association filed a grievance disputing the new deductions.

Paragraph 28.1 states the "Agreement constitutes the entire Agreement between the parties and encompasses all matters that were the subject of negotiations or could have been the subject of negotiations.  Neither party shall be required to negotiate on any matters except as provided for negotiations of a successor Agreement."  In turn, Paragraph 2.3 states the "Agreement shall not be modified in whole or in part by the parties except by an instrument in writing duly executed by both parties."

The CNA contains a multi-step grievance procedure culminating in binding arbitration.  Paragraph 3.7 states that "[t]he arbitrator shall limit themsel[f] to the issue(s) submitted to him/her and shall consider nothing else. He/she can add nothing to nor subtract anything from the Agreement between the parties or any policy of the Board of Education.  The award of the arbitrator shall be binding."

The grievance remained unresolved and proceeded to binding arbitration. In January 2018, the Public Employment Relations Commission appointed an

---

[3]  Because there are no writings addressing employee contribution to dental insurance premiums other than the PowerPoint provided by the Board, the alleged agreement for such contributions must have been verbal.

A-0370-19T3

arbitrator to hear and decide the stipulated issue of whether the Board "violated the contract between the parties or applicable law by deducting Chapter 78 premiums for dental[,] and if so[,] what shall be the remedy?"

The arbitration took place on May 1, 2018, with each party relying on the submitted documentation, oral argument, and the opportunity to submit post-hearing briefs, without calling any witnesses or submitting any affidavits in support of their respective positions.  As a result, the arbitration record did not contain evidence of any oral agreement reached by the negotiating teams for Association members to contribute to dental premiums, much less any proof that the contract ratified by the Association included employee dental insurance contributions.

On June 25, 2018, the arbitrator rendered her award and made the following findings of fact. The arbitrator noted that, after the Legislature enacted P.L. 2011, c. 78 (Chapter 78), the prior CNA, which expired on June 30, 2016, began Chapter 78 deductions.  The parties engaged in collective negotiations for a successor agreement until early Spring 2017.  The CNA incorporated the provisions of Chapter 78 by reference.  Chapter 78, in turn, provides:  "As used in this section, 'cost of coverage' means the premium or periodic charges for medical and prescription drug plan coverage, but not for dental, vision, or other

health care, provided under the State Health Benefits Program or the School Employees' Health Benefits Program . . . ."

Regarding ratification of the new CNA and payroll deductions, the arbitrator found:

> The Association was either informed of or agreed to enrollment in the State School Employees Health Benefits Program ("SEHBP" or "SHBP") as of July 1, 2017. On February 13, 2017, Association President Marcia Genova sent an email announcing a general meeting of the unit membership, and advising the ratification vote would occur on February 28, 2017, to give Association members time to become familiar with the SEHBP plans and required deductions.
>
> On February 15, 2017, Genova forwarded another email to all [twelve] building representatives, with an attached PowerPoint presentation to be shared with members. Exhibit B-4 is the PowerPoint document, identifying the amounts to be deducted from salaries, depending on the plan chosen by the employee, for both medical and dental insurance. On February 28, 2017, the [Association] members ratified the proposed contract by a vote of 686 to 101. It is not clear from the record what specific terms the Association members ratified.
>
> The Board acknowledges that beginning in the 2017-2018 school year, it included the costs of dental premiums when calculating the Chapter 78 contributions each unit member would make. The new dental deductions began on July 1, 2017 for 12-month employees and on September 1, 2017 for 10-month employees.

[Footnotes and citations omitted.]

The arbitrator determined the issue involved "contract interpretation and, therefore, the Association has the burden of proof." She noted that the record contained no evidence regarding "the employees' review of the PowerPoint" or "the specific terms discussed or voted on during the ratification meeting/vote." The arbitrator engaged in the following analysis:

> I find that Article 16.1 of the Agreement contains the only reference to health insurance. Article 16 contains no provision authorizing the payment of employee contributions toward dental premiums. The PowerPoint, which does contain the dental deductions is not referenced in the Agreement nor attached as an appendix, notwithstanding the fact that the parties have included several pages of appendices at the end of the Agreement.
>
> Chapter 78 does not mandate contributions to dental insurance, but specifically excludes the cost of dental and vision premiums in the "cost of coverage" - a key component of the formula for determining deductions. By excluding these components in the cost of coverage, I believe the legislature intended parties covered by collective negotiations agreements to determine, through collective negotiations, their own appropriate dental and vision rates. If parties choose to enroll in the state health benefits programs, they will have access only to those dental plans provided therein, but they must still negotiate the specific dental contribution rates up to the maximum set by regulation. The Division of Pensions and Benefits' Dental Rates fact sheet (Exhibit B-1) only identifies the maximum rates employees may be asked to contribute. The fact

sheet, by its terms, does not require or authorize the Board to determine the rates it chose unilaterally. N.J.A.C. 17:9-9.1(c)(4), cited by the Board, appears to require certain dental contributions. That section provides:

> 4. If an employer elects to participate in the Employee Dental Plans, the employee's share of the cost for the Plans may be determined by a formula different from that used to determine the employee's share of the cost of health coverage. <u>The employee may pay a share of the cost of dental coverage for the employee and for the employee's covered dependents as required by a collective negotiations agreement</u>. The employer may establish by ordinance or resolution, rules for the employee's share of the cost for those employees not covered under a collective negotiations agreement . . . . (emphasis added)

However, the use of the term "may" in the above paragraph means bargaining unit employees are permitted to contribute toward dental premiums, not that they are required to do so. The rule is consistent with Chapter 78 which also permits, but does not mandate, employee contributions toward dental premiums. The last line of the rule contemplates that for non-unit employees, the employer may set dental contribution rates unilaterally, but does not contain the same authorization for bargaining unit employees. Their deductions will be negotiated by parties and included in their collective Agreements.

9

The Arbitrator engaged in the following analysis in determining the Board

did not prove the membership approved the dental contributions.

> The Board argues the vote was based on information presented by the [Association] to the membership, including the dental deductions, and proves the membership approved the dental deductions. No witness verified that members who voted for ratification actually received, reviewed and approved the dental deduction alleged to have been approved. The Association argues that the PowerPoint contained a mistake and the mistake was later corrected. No witness in this hearing testified about the alleged mistake, or its correction. No witness verified the alleged mistake or its correction. In this case, the Agreement itself is the best evidence and it contains no reference to dental contributions.

> The Association proved that the Board and Association did not negotiate or agree to the dental contribution rates asserted by the Board. The Agreement contains no reference to the alleged rates. Moreover, the parties did not attach them to the Agreement nor include them as an appendix. There is no signed memorandum of agreement or side agreement in the record demonstrating the parties' agreement to these rates. I do not find that the PowerPoint presentation and ratification vote results alone are sufficient proof of an agreement on dental insurance.

> Finally, it is beyond the scope of my authority under Article 3.7 of the contract "to add to" the terms of the Agreement. I believe enforcing the Board's proposed dental contributions would improperly add to the terms of the Agreement, and I decline to do so.

The arbitrator determined the Board violated Paragraph 16.1 of the CNA when it imposed the new dental insurance deductions, concluding that "[n]o applicable law was shown to have required the deductions." Accordingly, the arbitrator sustained the grievance and ordered the Board to cease deducting dental premium contributions from members and to reimburse the amounts previously deducted by issuing checks or credits to employees toward future health insurance contributions.

On October 8, 2018, the Board filed this action seeking to vacate the arbitration award. It alleged the award contained mistakes of fact and law. The Association opposed the action, moved to dismiss the complaint with prejudice, and sought an award of attorneys' fees and costs.

The trial court heard oral argument on November 30, 2018 and issued an August 12, 2019 order and written opinion vacating the arbitration award. It determined the award was contrary to public policy and not reasonably debatable given the "undisputed facts." It found the record "establishe[d] that the parties engaged in negotiations, reached an agreement, and subsequently had a ratification vote that included the dental premiums." It noted that information "regarding the medical and dental premiums and contributions by members was distributed to the Association and members prior to the ratification vote." That

information included a PowerPoint prepared by the Board, which set forth "the details of the dental premiums." Accordingly, it concluded "the arbitrator's interpretation of the CNA regarding dental premiums is not supported by the facts." Based on its review of the evidence, the court stated it was "left with no other option other than to vacate the award, enforce the agreement and allow the Board to continue to deduct dental premiums."

Noting this case involved a grievance arbitration, the court explained that it must determine if the award is reasonably debatable (i.e., "whether the award draws its essence from the [CNA]" and "whether the award violates the law or public policy").

The court emphasized the PowerPoint advised the membership that the annual cost for dental premiums was $655 for family coverage, $401 for member and spouse coverage, $486 for parent and child coverage, and $230 for single coverage. It noted the CNA stated that medical, dental, and vision coverage shall be available through the SHEBP and that no employee's health care contribution should be less than 1.5% of their salary.

The court determined that the award "was not drawn from the agreement between the parties." It found the arbitrator "ignored the undisputed agreement between the parties regarding dental premiums" and "ignored and gave no

12

meaning or weight to the PowerPoint." The court found "the PowerPoint reflected the true meeting of the minds of the agreement between the parties" and "is part of the contract." The court was "satisfied that the PowerPoint contained sufficient detail to inform the members." It noted "[t]he Board collected dental premiums by applying the same formula as permitted under the legislative contribution requirements provided by Chapter 78."

Regarding public policy, the court stated "Chapter 78[] increased the amount that all public employees must contribute to their pension and health care insurance plans," by requiring "that all employees contribute at least one-and-one-half percent of compensation toward the cost of health coverage."

The court held the public policy of this State "envisions contribution by public employees towards their benefits including[] dental benefits." It concluded Chapter 78 was intended "to establish a mandatory minimum contribution standard that all state employees must pay for their health insurance benefits, based on a sliding scale tied to income level," with "employees paying at least 1.5% of the cost of coverage for all types of insurance." The court found this was "precisely the formula used the Board."

The court noted the award allows Association members to enjoy dental benefits without contributing to its cost, contrary to public policy and the

13

agreement of the parties. It held the Board did not violate the CNA when it imposed payroll deductions for dental insurance premiums because the CNA included employee contributions towards those premiums.

On appeal, the Association argues the trial court misconstrued the narrow statutory exceptions for vacating an arbitration award by holding the award was not reasonably debatable because the award did not consider evidence extrinsic to the CNA. In addition, the Association contends the court misinterpreted Chapter 78 as requiring mandatory minimum employee dental contributions of 1.5 percent, notwithstanding express statutory language excluding dental benefits from the cost of coverage under SEHBP. It further contends the court ignored long-recognized public policy that employee health care contributions are negotiable unless preempted by statute.

Notably, the Board does not argue that the omission of dental insurance premium contribution in the CNA was due to mistake or that the CNA should be reformed to include such contributions by bargaining unit members.

## II.

Our review of a trial court decision vacating a labor arbitration award is guided by certain well-established principles. We review a trial court's decision on a motion to vacate an arbitration award de novo. See Yarborough v. State

Operated Sch. Dist. of City of Newark, 455 N.J. Super. 136, 139 (App. Div. 2018) (citing Minkowitz v. Israeli, 433 N.J. Super. 111, 136 (App. Div. 2013)). However, "[j]udicial review of an arbitration award is very limited."  Bound Brook Bd. of Educ. v. Ciripompa, 228 N.J. 4, 11 (2017) (quoting Linden Bd. of Educ. v. Linden Educ. Ass'n ex rel. Mizichko, 202 N.J. 268, 276 (2010)).  "The public policy of this State favors arbitration as a means of settling disputes that otherwise would be litigated in a court."  Badiali v. N.J. Mfrs. Ins. Group, 220 N.J. 544, 556 (2015) (citing Cty. Coll. of Morris Staff Ass'n v. Cty. Coll. of Morris, 100 N.J. 383, 390 (1985)).  To ensure the finality and the expeditious and inexpensive nature of binding arbitration, there is "a strong preference for judicial confirmation of arbitration awards," particularly in public-sector labor disputes.  Borough of E. Rutherford v. E. Rutherford PBA Local 275, 213 N.J. 190, 201 (2013) (quoting Middletown Twp. PBA Local 124 v. Twp. of Middletown, 193 N.J. 1, 10 (2007)).

We apply "an extremely deferential review when a party to a collective bargaining agreement has sought to vacate an arbitrator's award."  Policemen's Benevolent Ass'n, Local No. 11 v. City of Trenton, 205 N.J. 422, 428 (2011).  "In the public sector, an arbitrator's award will be confirmed 'so long as the award is reasonably debatable.'"  Linden Bd. of Educ., 202 N.J. at 276 (quoting

15

Middletown Twp. PBA Local 124, 193 N.J. at 11).  An award is "reasonably debatable" if it is "justifiable" or "fully supportable in the record."  Policemen's Benevolent Ass'n, 205 N.J. at 431 (quoting Kearny PBA Local No. 21 v. Town of Kearny, 81 N.J. 208, 223-24 (1979)).  Under this standard, a reviewing court "may not substitute its own judgment for that of the arbitrator, regardless of the court's view of the correctness of the arbitrator's position."  N.J. Transit Bus Ops., Inc. v. Amalgamated Transit Union, 187 N.J. 546, 554 (2006) (citing State v. Int'l Fed'n of Prof'l & Technical Eng'rs, Local 195, 169 N.J. 505, 514 (2001)).

N.J.S.A. 2A:24-8 sets forth the grounds for vacating an arbitration award. Pertinent to this appeal, a court must vacate an arbitration award: "Where the award was procured by corruption, fraud or undue means; . . . [or] [w]here the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made."  N.J.S.A. 2A:24-8(a), (d).

Additionally, when reviewing an arbitrator's interpretation of a public-sector contract, "a court 'may vacate an award if it is contrary to existing law or public policy.'"  Middletown Twp. PBA Local 124, 193 N.J. at 11 (quoting N.J. Tpk. Auth. v. Local196, Int'l Fed'n Prof. Tech. Eng'rs, 190 N.J. 283, 294 (2007)). Heightened scrutiny is required "when an arbitration award implicates 'a clear

mandate of public policy.'" Int'l Fed'n Prof. Tech. Eng'rs, 190 N.J. at 294 (quoting Weiss v. Carpenter, Bennett & Morrissey, 143 N.J. 420, 443 (1996)).

An arbitrator exceeds her authority where she ignores "the clear and unambiguous language of the agreement." City Ass'n of Supervisors & Adm'rs v. State Operated Sch. Dist. of City of Newark, 311 N.J. Super. 300, 312 (App. Div. 1998). "Thus, an arbitrator may not disregard the terms of the parties' agreement, nor may [s]he rewrite the contract for the parties." Cty. Coll. of Morris, 100 N.J. at 391 (citation omitted).

"Although arbitrators may not look beyond the four corners of a contract to alter unambiguous language, where a term is not defined, it may be necessary for an 'arbitrator to fill in the gap and give meaning to that term.'" Policemen's Benevolent Ass'n, 205 N.J. at 430 (quoting Linden Bd. of Educ., 202 N.J. at 277). If contract terms are unspecific or vague, "extrinsic evidence may be used to shed light on the mutual understanding of the parties." Hall v. Bd. of Educ. of Twp. of Jefferson, 125 N.J. 299, 305 (1991).

Although the arbitrator is not free to contradict the express language of a contract, "an arbitrator may 'weav[e] together' all those provisions that bear on the relevant question in coming to a final conclusion." Policemen's Benevolent Ass'n, 205 N.J. at 430 (alteration in original) (quoting N.J. Transit Bus

17

Operations, 187 N.J. at 555). "[S]o long as the contract, as a whole, supports the arbitrator's interpretation, the award will be upheld." Ibid.

Here, the express terms of the CNA are clear and unambiguous and do not require employees to contribute to the cost of dental benefits. Moreover, there was no past practice of employees contributing to the cost of dental benefits.

The award was not contrary to existing law. Chapter 78 does not mandate employees to contribute to dental insurance premiums. On the contrary, the statute excludes "premium or periodic charges" for dental care "provided under the [SEHBP]" from the definition of cost of medical coverage provided pursuant to Chapter 78. N.J.S.A. 52:14-17.28(c). Instead, employee contributions to dental insurance premiums is subject to negotiation and agreement. To that end, N.J.A.C. 17:9-9.1(c)(4) provides:

> If an employer elects to participate in the Employee Dental Plans, the employee's share of the cost for the Plans may be determined by a formula different from that used to determine the employee's share of the cost of health coverage. The employee may pay a share of the cost dental coverage for the employee and for the employee's covered dependents as required by a collective negotiations agreement.

The CNA reflects no such agreement.

The Arbitrator correctly concluded that N.J.S.A. 52:14-17.28(c) and N.J.A.C. 17:9-9.1(c)(4) do not mandate employee contributions to dental

18

insurance. Accordingly, neither the CNA as written nor the arbitration award violate public policy.

While the Board and the Association apparently engaged in unspecified negotiations regarding employee contributions to dental insurance premiums, the Board produced no evidence of the substance of such negotiations and any resulting agreement because it elected not to present any testimony, affidavits, or exhibits, other than the PowerPoint, at the arbitration hearing. Absent this proof, the arbitrator correctly concluded that the record did not support imposing salary deductions for dental benefits. Moreover, the Board drafted the CNA. If an agreement as to contribution to dental benefits was reached, it was incumbent on the Board to include those terms in the CNA through express language or appendices. It did not.

We reiterate that the Board did not argue before the arbitrator, the trial court, or this court that dental benefit contribution language was inadvertently omitted from the executed CNA or that the contract should be reformed to correct that error. In the absence of such argument, neither the arbitrator nor the trial court was free to add additional language to the CNA imposing such contributions where the CNA was not ambiguous and there was no past practice of contributing to those premiums. The trial court erred in doing so.

In sum, we are satisfied that the arbitrator's award is reasonably debatable and did not violate existing law or public policy. We reverse the order that vacated the arbitration award and reinstate the remedy the award imposed.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0370-19T3