**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2277-18T3

BOROUGH OF CARTERET,
a municipal corporation of the
State of New Jersey,

     Plaintiff-Appellant,

v.

FIREFIGHTERS MUTUAL
BENEVOLENT
ASSOCIATION, LOCAL 67,

     Defendant-Respondent.

_____

Submitted November 14, 2019 – Decided June 25, 2020

Before Judges Nugent and Suter.

On appeal from the Superior Court of New Jersey, Chancery Division, Middlesex County, Docket No. C-000134-18.

McManimon, Scotland & Baumann, LLC, attorneys for appellant (Ted Del Guercio, III, on the briefs).

Kroll Heineman Carton, LLC, attorneys for respondent (Raymond G. Heineman, of counsel and on the brief).

PER CURIAM

Plaintiff, Borough of Carteret, appeals from a Chancery Division order that confirmed a labor arbitration award interpreting a collective negotiations agreement (CNA) between plaintiff and defendant Local 67 of the Firefighters Mutual Benevolent Association (FMBA). Because the arbitrator's interpretation of the disputed CNA clause was not a reasonably debatable construction of the clause as written, and because the arbitrator construed the clause by implying terms neither contained in the clause nor intended by the parties, we reverse the Chancery Division order and vacate the arbitration award.

The record on appeal includes the following facts. The Borough and FMBA were parties to a CNA effective January 1, 2011, through December 31, 2015. Article VIII, Section 5 (the Disputed Clause), entitled "Acting Captains," states:

> There shall be a Captain assigned to each tour of duty, referred to as a Shift Captain. Whenever a Shift Captain is off, the senior firefighter on duty shall assume the responsibilities of Acting Captain and shall receive the rate of pay of a Captain for each day of such service, providing this does not conflict with Civil Service regulations.

Between 2011 and 2013, the Borough fire department consisted of approximately forty firefighters. There were four fire captains and one fire

chief. FMBA represented the firefighters and the captains but not the chief. The CNA's salary guide reflects the department's structure during those years, namely, the firefighters, the captains, and the chief.

In 2012, the Borough adopted an ordinance that restructured the fire department, creating four positions for fire lieutenants. With the approval of the Civil Service Commission, the Borough used the "existing Fire Captain Roster" to appoint the new lieutenants. The Borough also amended its salary ordinance to include the position of fire lieutenant. According to the arbitration decision, fire lieutenants were paid more than "a top-paid firefighter" but less than fire captains. In July 2013, the Borough appointed four lieutenants. For the next four years, the lieutenants executed the duties of fire lieutenants at the pay rate for lieutenants. Nothing in the record indicates that during those years lieutenants made a demand to be compensated at a captain's rate of pay when "[acting] in the place of a Fire Captain in his/her absence"—a duty included in the Civil Service Commission's "Job Specification 01843" for a fire lieutenant.

By 2018, the four captains had either retired or had been demoted, and not one had been replaced. Two retired in 2015, the third was demoted in 2016, and the fourth retired in March 2018.

In August 2017, FMBA filed a grievance with the Borough seeking retroactive captain's pay for all lieutenants who had acted in the place of absent captains. The Borough denied the grievance and it ultimately was arbitrated. While the arbitration was pending, the four fire lieutenants filed classification appeals with the Civil Service Commission pursuant to N.J.A.C. 4A:3-3.9(d), which authorizes employees to petition the Commission for both a determination whether the duties they are performing conform to the specification for their title and a change in title.

According to the arbitration decision, the parties stipulated the issue the arbitrator was to decide: "Did the Borough violate Article 8, Section 5, of the collective negotiations agreement by failing to pay acting captain's pay to lieutenants who assumed the responsibilities of acting captains since August 7, 2017? If so, what shall be the remedy?" The arbitrator answered the first question in the affirmative and directed the Borough to compensate all lieutenants "at the acting captain pay rate for each shift which they worked to which no captain was assigned from August 7, 2017 forward."

According to the arbitrator's written decision, three witnesses testified: the Fire Chief, who was a former FMBA Local 67 president; an FMBA State delegate, Tom Reynolds; and the current FMBA Local 67 president, Jason

4

Kurdyla. Reynolds and Kurdyla confirmed that after the last captain left in 2018, the lieutenants assumed all the duties previously performed by captains, including running the shift and taking command at the fire scene. In addition, they testified FMBA members never held a vote or moved to modify the existing CNA.

The Borough Fire Chief, who had become the chief in April 2013 while finishing his tenure as Local 67 president, which ended in August 2013, gave contrasting testimony. According to the Chief, the lieutenant positions, which became effective in January 2013, were to be compensated at a rate slightly higher than that of a firefighter but lower than that of a captain. Lieutenants were to assume a greater supervisory role at fires, enhance the chain of command, and fill in for unavailable fire captains. The Chief also testified the Borough and FMBA had extensive discussions about the new lieutenant position between 2012 and 2013. He asserted the parties agreed if the Borough created four new lieutenant positions, FMBA would waive any acting captain's pay

provided in the contract. He produced meeting minutes to verify the members had voted to ratify this agreement.[1]

The arbitrator found the Borough had violated the CNA by failing to allot acting captain's pay to lieutenants after August 7, 2017, the date FMBA filed the grievance. She did not credit the Chief's testimony but instead concluded the Borough failed to prove there was any agreement to modify the CNA. She reached this conclusion because the Chief did not identify any of the negotiators for either the Borough or the Union, the minutes of the Union meetings for 2012 and 2013 included no notation of a membership vote, and the Chief's overlapping roles as Acting Chief and Union President tainted any purported negotiations over the new lieutenant positions. Conversely, the arbitrator found credible Reynolds' and Kurdyla's testimony that no vote or agreement had occurred to modify the existing CNA.

The arbitrator found FMBA's grievance was timely, though filed several years after creation of the lieutenant position, because it related to "a continuing violation." She reasoned that each time a lieutenant did not receive acting

---

[1] Although handwritten meeting minutes are included in the record, they are mostly illegible. It is difficult to discern from them what exactly took place at those meetings.

A-2277-18T3

captain's pay, the violation constituted a new occurrence. However, because FMBA did not file the grievance until August 7, 2017, lieutenants could only recover retroactive pay from that date forward.

The arbitrator explained that the Disputed Clause supported acting captain's pay for lieutenants after August 7, 2017:

> At the time that the CNA was negotiated and ratified by the parties, the position of Fire Lieutenant did not exist -- the unit was then composed of rank-and-file firefighters and captains. Effective January 1, 2012, a year after the current contract took effect, a Borough ordinance created new lieutenant positions, and unilaterally set the compensation for the positions at approximately $1,500 above . . . that of a firefighter at the top step of the salary guide. . . .
>
> . . . .
>
> At the time that the current Article 8, Section 5 of the contract became effective on January 1, 2011, there were four fire captains; between 2013 and mid-2018, all four had either retired or been demoted. . . . In the absence of any sitting captains the duties attached to that position must be performed. There is no testimony or other evidence in the record that the duties of captains are being performed by the Chief Hruska. There is, however, unrebutted testimony from Kurdyla that the lieutenants are performing the duties of shift commanders. I conclude, based upon the testimony and the full record before me that lieutenants are performing the duties previously performed by captains. In effect, whether intentional or not, what the Borough has done is to replace captains with lieutenants, at a lower pay rate. The lieutenants are

A-2277-18T3

> entitled to pay as acting captains for every day since August 7, 2017 when they assumed the responsibilities of an acting captain, and . . . the Borough's failure to compensate them is a violation of Article 8, Section 5 of the collective negotiations agreement.

The arbitrator further concluded the alleged past practice of withholding acting captain's pay could not supersede the Disputed Clause's unambiguous contract language.

FMBA filed a petition to confirm the arbitration award, and the Borough filed a verified complaint seeking to vacate the arbitration award. Following a hearing, the trial court issued a written decision confirming the award. Agreeing with the arbitrator's award, the court noted, among other reasons:

> The Borough, found by the Arbitrator, assigned the duties of the captain, including the five administrative duties, to lieutenants. Thus, Lieutenants who are doing the duty of an acting captain, should be paid acting pay pursuant to the contract and civil service. Therefore, the Arbitrator correctly found that fire lieutenants who assumed the duties of a shift captain were entitled to the payment of an acting captain pay. The Borough has continued to maintain duties of shift captain on each shift and has those duties conveyed to fire lieutenants, in the absence of fire captains.

The court concluded the arbitrator did not exceed her powers under N.J.S.A. 2A:24-8(d), and that her interpretation of the CNA was reasonably debatable.

The Borough filed a notice of appeal. The trial court denied the Borough's

motion for a stay pending appeal. After the Borough filed its notice of appeal, the Civil Service Commission, Division of Agency Services, rejected the four lieutenants' classification appeals. For each lieutenant, the Division determined "the current duties and responsibilities assigned to the position are commensurate with the title Fire Lieutenant (01843)." We granted the Borough's motion to supplement the appellate record with these determinations. The Borough has since submitted the final administrative decision of the Civil Service Commission upholding the Division of Agency Services determinations.

On appeal, the Borough argues the trial court erred by not setting aside the arbitration award because the arbitrator imperfectly executed her powers, misinterpreted the Disputed Clause's plain language, ignored, among other things, the parties' past practice, and improperly disregarded the Fire Chief's testimony. The Borough also argues the trial court's affirmation of the arbitrator's award impinges upon managerial prerogative concerning shift scheduling and staffing. The Borough emphasizes the Civil Service Commission's final agency decision confirms the arbitrator's and the trial court's mistaken conclusions that the fire lieutenants are performing the duties of fire captains.

9

FMBA responds that the arbitrator's factual determinations are not subject to de novo review, her award is not contrary to public policy, and the award represents a rational interpretation of the parties' agreement. FMBA disputes the desk audit decisions of the Civil Service Commission are dispositive.

The Borough replies that the practical result of the arbitration award is to require captains on each duty shift, issues involving staffing are matters of managerial prerogative, the Borough has paid the back pay as a result of the Chancery Division's decision, and the desk audit responses are persuasive.

Our review of the trial court's decision is de novo. Minkowitz v. Israeli, 433 N.J. Super. 111, 136 (App. Div. 2013). In contrast, our review of "arbitration awards is extremely limited and an arbitrator's award is not . . . set aside lightly." State v. Int'l Fed'n of Prof'l & Tech. Eng'rs, Local 195, 169 N.J. 505, 513 (2001) (citing Kearny PBA Local # 21 v. Town of Kearny, 81 N.J. 208, 221 (1979)). Neither the trial court nor this court may second-guess the arbitrator's interpretation of the CNA, so long as her construction is reasonably debatable. Middletown Twp. PBA Local 124 v. Twp. of Middletown, 193 N.J. 1, 11 (2007). A construction is reasonably debatable if it is "plausible," Policemen's Benevolent Ass'n Local No. 11 v. City of Trenton, 205 N.J. 422, 430-31 (2011), or "justifiable" or "fully supportable in the record," id. at 431

10

(quoting Kearny PBA Local #21, 81 N.J. at 223-24). Under that standard, an arbitrator's interpretation of a CNA need not be the only interpretation or the best one. Id. at 432. "What is required is that the arbitrator's interpretation finds support in the Agreement . . . ." Ibid.

Arbitrators "may not look beyond the four corners of a contract to alter unambiguous language . . . ." Id. at 430. "Thus, our courts have vacated arbitration awards as not reasonably debatable when arbitrators have, for example, added new terms to an agreement or ignored its clear language." Id. at 429.

In addition, "in rare circumstances" an arbitration award may be overturned where it violates public policy. Borough of E. Rutherford v. E. Rutherford PBA Local 275, 213 N.J. 190, 202 (2013) (citation omitted).

> "For purposes of judicial review of labor arbitration awards, public policy sufficient to vacate an award must be embodied in legislative enactments, administrative regulations, or legal precedents," and may not be "based on amorphous considerations of the common weal." Moreover, the public policy exception is triggered when "a labor arbitration award—not the grievant's conduct—violates a clear mandate of public policy . . . ."
>
> [Middletown Twp. PBA Local 124, 193 N.J. at 11 (quoting N.J. Tpk. Auth. v. Local 196, 190 N.J. 283, 295, 300 (2007)).]

11

Having reviewed the record under the foregoing standard, we conclude the arbitrator's construction of the Disputed Clause is not reasonably debatable and therefore must be vacated. To arrive at the construction she did, the arbitrator in effect engrafted terms concerning lieutenants onto the Disputed Clause, terms that are contrary to the Disputed Clause's plain language and were unintended by the parties when they negotiated the CNA.

When the Disputed Clause was negotiated, lieutenants did not exist in the fire department. That fact is undisputed. Undisputed, too, is the Civil Service Commission job specification for a firefighter, admitted as an exhibit during the arbitration. Absent from that specification is any provision that suggests the job includes performing duties when a captain is absent from a shift. Consequently, when a firefighter performs a captain's duties, the firefighter is performing work beyond the job description and assuming greater responsibilities than those delineated in the job specification. The Disputed Clause thus compensates a firefighter when performing the duties of an acting captain. That is precisely what the plain and unambiguous language of the Disputed Clause provides.

In contrast to the position of firefighter, included in the Civil Service Commission job specification for a fire lieutenant is this example of a

lieutenant's work: "[a]cts in the place of a Fire Captain in his/her absence." This is one of many duties that distinguishes a lieutenant from a firefighter.

We point out the contrasting duties because the arbitrator concluded the Disputed Clause clearly and unambiguously entitled lieutenants to the captain's pay rate when performing duties in a captain's absence. Yet, the Disputed Clause is devoid of any language concerning lieutenants, and nothing in the record suggests a reason why lieutenants should receive extra compensation for performing work within their job description. Of course, here the record is undisputed that neither FMBA nor the Borough contemplated such a result when they negotiated the Disputed Clause, because FMBA did not represent any lieutenants, as there were none.

It is not insignificant the arbitrator rejected the Borough's "past practice" argument and gave virtually no consideration to the lieutenants performing their job duties, including acting in the place of a fire captain in his or her absence, for four years without a request for any pay beyond that to which they were entitled under the Borough's salary ordinance. The arbitrator rejected the Borough's argument that the four-year past practice was significant on the basis the Disputed Clause was clear and unambiguous. Yet, the clause as written, if attempted to be applied to lieutenants, is anything but clear. The clause as

13

written mandates that a senior firefighter assume the responsibilities of acting captain when a shift captain is off, "providing this does not conflict with Civil Service Regulations." This plain language, if followed after the creation of lieutenant positions, would violate Civil Service Regulations by mandating a firefighter assume the responsibilities of a captain and perform work beyond his or her job description, rather than a lieutenant, whose job description includes such responsibility.

As previously noted, the Supreme Court has recognized that "our courts have vacated arbitration awards as not reasonably debatable when arbitrators have, for example, added new terms to an agreement or ignored its clear language." Policemen's Benevolent Ass'n, Local No. 11, 205 N.J. at 429-430. Here, the arbitrator interpreted the disputed clause contrary to its clear and unambiguous language and construed the clause by implying terms concerning lieutenants. Her construction, engrafting onto the Disputed Clause terms neither contained nor intended to be contained in the clause, and ignoring the clause's clear language, which neither applied to nor was intended to apply to lieutenants, was not reasonably debatable. Accordingly, we reverse the trial court's order upholding the arbitration award and vacate the award.

Reversed and vacated.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14

A-2277-18T3