**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0143-21

HOBOKEN MUNICIPAL
EMPLOYEES' ASSOCIATION,

    Plaintiff-Respondent,

v.

CITY OF HOBOKEN,

    Defendant-Appellant.

_____

> Submitted June 2, 2022 – Decided July 8, 2022
>
> Before Judges Mitterhoff and Alvarez.
>
> On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-0944-21.
>
> Lite Depalma Greenberg & Afanador, LLC, attorneys for appellant (Victor A. Afanador, on the briefs).
>
> Limsky Mitolo, attorneys for respondent (Marcia J. Mitolo, on the brief).

PER CURIAM

In this labor dispute, defendant-appellant City of Hoboken (the City) appeals from an August 5, 2021 order that vacated a January 15, 2021 arbitrator's award sustaining in part and denying in part respondent Hoboken Municipal Employees' Association's (HMEA) grievance against the City. We affirm, substantially or the reasons set forth in Judge Anthony V. D'Elia's well-reasoned oral and written opinions. We add the following.

HMEA represents civilian municipal employees of the City of Hoboken. The City and HMEA entered into a collective bargaining agreement (CBA) for the period of July 1, 2002 through June 30, 2005. Since the expiration of that agreement, the parties have used a series of memorandums of agreement (MOA) to maintain their labor agreement. The most recent MOA expired in 2017, and since then, the parties have been trying to negotiate a new agreement, which would cover 2018-2020 or another agreed-upon period. The parties' agreement contains a multi-step grievance process for resolving disputes, which terminates in binding arbitration in accordance with the rules and regulations of the New Jersey Public Employment Relations Commission (PERC).

By the end of 2019, the City was facing significant budgetary problems. According to the City's Director of Finance, when budgeting for 2020, it was clear that "anticipated increases in the spending for 2020 would lead to a

significant budget gap, if not addressed urgently." The total budget shortfall was estimated to be $7,420,795. The City was also limited in its ability to compensate for the budget shortfall by taxing residents since it could only raise property taxes to a level of $6,865,203 per year without a referendum. The onset of the COVID-19 pandemic made the City hesitant to raise taxes out of fear of overburdening the taxpayers.

In January 2020, the City submitted a layoff plan to the Civil Service Commission. Pursuant to the plan, on or about May 1, 2020, layoff rights notices were given to the employees facing layoffs. Some of these employees were in the bargaining unit represented by HMEA. Affected employees with sufficient seniority were offered "lateral" or "demotional" bumping rights and were asked to promptly advise whether they would exercise those rights instead of being laid off. When exercising lateral bumping rights, grievants bumped employees who were in a different position but who held the same title. When exercising demotional bumping rights, grievants bumped employees who were in a different title with a lower pay range. The City unilaterally set salaries for all employees who exercised their bumping rights at $35,000 per year, and they were provided an additional $1,000 for every year of service since 2012, even if they were hired long before that time. Many of these employees remained in

their own titles or positions and still received a reduced salary. The City set these salaries without negotiation with the Union.

On May 1, 2020, HMEA filed a grievance against the City. On or about May 18, 2020, HMEA submitted a request for a panel of arbitrators to PERC. At the arbitration hearing, HMEA argued the City violated the CBA by establishing salaries for the displaced employees without engaging in a proper negotiations process. The City contended that it followed the CBA and set salaries for the newly created positions in accordance with previously negotiated salary ranges already in place.

On January 15, 2021, the arbitrator issued an opinion and award sustaining in part and denying in part HMEA's grievance against the City. He found that the City violated the CBA with respect to employees' lateral bumping rights but found no violation regarding the demotional bumping. The arbitrator concluded that because the City had unilaterally established starting salaries for newly hired and promoted employees, a "past practice" existed that allowed the City to likewise fix salaries for employees who were demoted.

HMEA filed an order to show cause in the Law Division seeking to vacate the arbitrator's decision. On May 26, 2021, Judge D'Elia reversed the arbitrator's decision, concluding it lacked factual support to extend a past practice dealing

4

with new hires and promotions to employees who are demoted to a lower title.

The judge explained:

> The arbitrator . . . found that there was a past practice for new hires and promotional hires. And then he jumped, and he said, that, therefore, means that . . . the union agreed that you could always say the salary in the range when they get put into a new title. And I asked . . . a couple of times, what factual basis or reasons did he give to make that jump? Or did he just make that jump on his own?
>
> And [counsel for the City] pointed to the one paragraph that was in the briefs, and nothing else. And I'm just telling you, based on that record, I don't see any facts to support the arbitrator's decision that that was the past practice.
>
> . . . I think it's unreasonable based on this record to conclude that the union would have shut its mouth in the past if they reduce people's salaries, and . . . unilaterally pick the salaries that they would get when . . . they had a bump and go to a lower title.
>
> There's been no . . . factual basis to support that conclusion at all. That's what I'm saying. So, therefore, I don't think he had a good reason to make that jump, based on this record. Because the facts are not in dispute. The facts are definitely not in dispute. In the past, the union was very happy to let the City pick the salaries when somebody was hired new, or got promoted.
>
> And there's never been one instance where the union shut its mouth and was happy with someone getting demoted, and letting the City pick the salary.

5

All right? That's my finding on the record factually on that. And so that's not going to be re-argued. . . . I find that it is not reasonably debatable. I think that the arbitrator's decision in that regard was unreasonable. No factual support in the record to support a conclusion that . . . there was a past practice of the union shutting its mouth when . . . an employee was reduced in salary and demoted to a lower title.

So . . . now we get to managerial prerogative. That's going to be briefed in three weeks. Everybody will have ten days to respond. . . .

On July 8, 2021, Judge D'Elia heard arguments on the managerial prerogative issue. On August 5, 2021, in a written opinion, the judge concluded that the City did not have a managerial prerogative to unilaterally set salaries for employees who exercised their "demotional" bumping rights. He reasoned:

[I]n [Robbinsville Twp. Bd. of Educ. v. Washington Twp. Educ. Ass'n, 227 N.J. 192 (2016)] the [Supreme] Court specifically found that [Borough of Keyport v. Int'l Union of Operating Eng'rs, 222 N.J. 314 (2015)] does not stand for the proposition that any time a municipal public employer claims an economic crisis, managerial prerogative allows that employer to throw a collectively negotiated agreement out the window. It specifically found ". . . to the contrary, Keyport painstakingly emphasized the significance of an agency of state government enacting a temporary emergency regulation to provide local governmental managers with enhanced prerogatives in handling the extraordinary fiscal times in the late 2000['s].[" ]Ibid. The regulation['s] existence made all the difference in Keyport as, ". . . it was mentioned by the Court repeatedly throughout the opinion[.]" Ibid. The

6

<u>Robbinsville</u> Court emphasized that "[h]ad the temporary regulation not provided that extra managerial authority, the fact patterns in the three consolidated cases in <u>Keyport</u> would have foundered on the [third] prong analysis[.]"[] <u>Ibid.</u> (emphasis added).

The parties agree in the instant matter that there is no regulatory authority for the unilateral actions taken by the . . . City of Hoboken. Thus, this [c]ourt finds that the [C]ity did not have the managerial prerogative to unilaterally set salaries for those employees who exercised "demotional" bumping rights into lower titles under the layoff plan.

This [c]ourt agrees with the Supreme Court in <u>Robbinsville</u>[] when the Court stated ". . . a claimed need for managerial prerogative to prevail in tight budgetary times in order for municipal governmental policy to be properly determined would eviscerate the durability of collective negotiated agreements. Collective negotiated agreements – promises on wages, rates of pay and hours, and other traditional terms and conditions of employment – would mean nothing in the wake of any financial setback faced by a local governmental entity." <u>Robbinsville</u>, . . . at . . . 204.

The City's argument in this case is essentially that the tight budgetary times of 2019 operated to give Hoboken a managerial prerogative to ignore the collective negotiated agreement regarding wages and rates of pay simply because the [C]ity was facing a financial setback. This is exactly the type of argument that was rejected in <u>Robbinsville</u>, as summarized above.

For the above reasons, the arbitrator's decision is vacated in its entirety: the [c]ourt finds there was an insufficient basis for a finding that there was past

7

practice justifying the [C]ity's actions in this case and now finds that the [C]ity did not have a managerial prerogative to unilaterally set salaries for those employees who exercised their "demotional" bumping rights. The parties must now negotiate the appropriate salaries for those employees who exercised their "demotional" bumping rights; retroactive to the date their salaries were reduced.

On appeal, the City presents the following arguments for our consideration:

POINT I

THE TRIAL COURT ERRED IN FAILING TO DEFER TO THE ARBITRATOR'S REASONABLY DEBATABLE DECISION AND FAILED TO ANALYZE THE ARBITRATOR'S DECISION UNDER THE NEW JERSEY ARBITRATION ACT, N.J.S.A. 2A:24-8.

POINT II

THE TRIAL COURT ERRED IN CONCLUDING THAT THE CITY DID NOT HAVE A MANAGERIAL PREROGATIVE TO IMPLEMENT A PERMANENT LAYOFF PLAN.

A.    The Trial Court incorrectly applied Robbinsville's narrow holding to the facts of this case.

B.  Borough of Keyport supports a finding that the City had a managerial prerogative to implement a permanent layoff plan.

A-0143-21

"In the public sector, an arbitrator's award will be confirmed 'so long as the award is reasonably debatable.'" Linden Bd. of Educ. v. Linden Educ. Ass'n ex rel. Mizichko, 202 N.J. 268, 276 (2010) (quoting Middletown Twp. PBA Loc. 124 v. Twp. of Middletown, 193 N.J. 1, 11 (2007)). An award is "reasonably debatable" if it is "justifiable" or "fully supportable in the record." Policemen's Benevolent Ass'n v. City of Trenton, 205 N.J. 422, 431 (2011) (quoting Kearny PBA Loc. # 21 v. Town of Kearny, 81 N.J. 208, 223-24 (1979)). "Under the 'reasonably debatable' standard, a court reviewing [a public-sector] arbitration award 'may not substitute its own judgment for that of the arbitrator, regardless of the court's view of the correctness of the arbitrator's position.'" Borough of E. Rutherford v. E. Rutherford PBA Loc. 275, 213 N.J. 190, 201-02 (2013) (alteration in original) (quoting Middletown Twp., 193 N.J. at 11).

N.J.S.A. 2A:24-8 sets forth the limited statutory grounds on which we may vacate an arbitration award. Pertinent to this appeal, we may vacate an arbitration award "[w]here the award was procured by corruption, fraud or undue means" or "[w]here the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made." N.J.S.A. 2A:24-8(a) and (d).

A-0143-21

"'[U]ndue means' ordinarily encompasses a situation in which the arbitrator has made an acknowledged mistake of fact or law or a mistake that is apparent on the face of the record . . . ." Borough of E. Rutherford, 213 N.J. at 203 (alteration in original) (quoting Off. of Emp. Rels. v. Commc'ns Workers of Am., AFL-CIO, 154 N.J. 98, 111 (1998)). Arbitrators exceed their authority where they ignore "the clear and unambiguous language of the agreement." City Ass'n of Supervisors & Adm'rs v. State Operated Sch. Dist. of City of Newark, 311 N.J. Super. 300, 312 (App. Div. 1998). It is fundamental that "an arbitrator may not disregard the terms of the parties' agreement, . . . nor may he [or she] rewrite the contract for the parties." Cnty. Coll. of Morris Staff Ass'n. v. Cnty. Coll. of Morris, 100 N.J. 383, 391 (1985) (citation omitted). Furthermore, "the arbitrator may not contradict the express language of the contract." Linden Bd. of Educ., 202 N.J. at 276.

The City argues that the judge did not afford the arbitrator's findings the proper deference owed under the reasonably debatable standard. We reject this argument as we agree with Judge D'Elia that the arbitrator made mistakes of both fact and law that are apparent on the face of the record.

First, we conclude, as did the judge, that the record was devoid of facts to support of a past practice of unilaterally setting wages that could be extended to

10

demoted employees. As the judge observed, new hires and promoted employees do not have the same expectation of a certain salary within the range. New hires can either accept or reject the job based on the salary offer. Promoted employees presumably receive either a more prestigious title, a pay raise, or both. Demoted employees, in contrast, are required to accept a lesser title and salary than that which they previously bargained for. The judge was correct that the absence of a factual basis for extending the City's past practice to demoted employees is obvious and not subject to debate. Borough of E. Rutherford, 213 N.J. at 203.

Second, we concur with the judge's rejection of the arbitrator's conclusion that the budgetary crisis conferred upon the City a managerial prerogative to ignore the CBA and set wages without negotiation. The judge explained:

> In Robbinsville, the Supreme Court clearly stated that its earlier opinion, Borough of Keyport, does not " . . . support a general proposition that, in times of economic crisis, a [local public entity] may unilaterally impose furlough days on staff members in contravention of a parties' collective negotiation agreement governing terms and conditions of employment." Robbinsville, . . . at 194.
>
> In Robbinsville, the local Board of Education imposed involuntary furlough days on teachers, thereby negatively impacting those employees' wages. An unfair labor practice charge was filed with P.E.R.C. challenging the Board's action as violating the terms of the collective bargaining agreement and the New Jersey Employer-Employees Act. N.J.S.A. 34:13A-1 to 43. In

11

granting summary judgment to the Board, P.E.R.C. relied upon the Appellate Division opinion in Keyport. The Appellate Division then affirmed P.E.R.C.'s ruling based upon the Supreme Court opinion in Borough of Keyport of July 14, 2015, (which had been rendered after P.E.R.C. granted the board summary judgment).

In reversing summary judgment, the Robbinsville Court held that the Appellate Division relied upon an overly broad and mistaken reading of its earlier Keyport opinion. In doing so, the Supreme Court affirmed that [it] is beyond dispute: public employers have a non-negotiable managerial prerogative to reduce the work force by laying off employees. Robbinsville . . . , at . . . 200. The Court emphasized that in Keyport it recognized that public employers could unilaterally alter an employee's rate of pay and workdays in accordance with a duly authorized layoff plan during times of acute economic crisis. Ibid. [T]he Court also emphasized that the analytical approach in Keyport resorted to the well-established three prong analysis from [(IFPTE, AFL-CIO v. State 88 N.J. 393, 403-05 (1982)] Local 195 to determine negotiability of furloughs.[1] The Court held that []. . . the critical question turned on the [third] prong, which required a balancing of the public employer's interest in "the determination of governmental policy" and the employee's interest in their work and welfare. Id. at . . . 201. The Robbinsville Court emphasized that it had

---

[1] In Keyport, the Court clarified that New Jersey only has two categories of subjects for public employment negotiation: mandatorily negotiable terms and conditions of employment and non-negotiable matters of government policy. 222 N.J. at 333. The Court held that a subject is negotiable when "(1) the item intimately and directly affects the work and welfare of public employees; (2) the subject has not been fully or partially preempted by statute or regulation; and (3) a negotiated agreement would not significantly interfere with the determination of governmental policy." Id., at 334.

recognized – in Keyport – that the ". . . emergency regulation (which was then in place) authorizing temporary layoffs due to the exigent financially distressing conditions was a clear expression of public policy authorizing such actions to be taken." Ibid. (citing to the Keyport opinion). Significantly, the Robbinsville Court emphasized that it was important to the Court in Keyport that the municipality there had acted while the emergency regulation was in effect and while the municipality faced financial crisis. Id. at . . . 202.

The Court expressly held that []. . . because there was no statute or regulation in place (in Robbinsville as there had been in the Keyport matter) authorizing a local entity to unilaterally negatively affect the salary of certain employees, the appellate panel had misapplied the Court's earlier holding in Keyport when analyzing the [third] prong of the test. The Court found that the appellate panel had undervalued the lack of an authorizing temporary emergency regulation that permitted temporary furloughs – a factor that had the significant impact of titling the public policy calculus under the [third] prong of the Local 195 analysis in favor of non- negotiability. Id. at . . . 203.

Moreover, in Robbinsville, the Court specifically found that Keyport does not stand for the proposition that any time a municipal public employer claims an economic crisis, managerial prerogative allows that employer to throw a collectively negotiated agreement out the window. It specifically found ". . . to the contrary, Keyport painstakingly emphasized the significance of an agency of state government enacting a temporary emergency regulation to provide local governmental managers with enhanced prerogatives in handling the extraordinary fiscal times in the late 2000['s].[" ]Ibid. The regulation['s] existence made all

13

the difference in <u>Keyport</u> as, ". . . it was mentioned by the Court repeatedly throughout the opinion[.]"  <u>Ibid.</u> The <u>Robbinsville</u> Court emphasized that "[h]ad the temporary regulation not provided that extra managerial authority, the fact patterns in the three consolidated cases in <u>Keyport</u> would have foundered on the [third] prong analysis[.]"[]  <u>Ibid.</u> (emphasis added).

The parties agree in the instant matter that there is no regulatory authority for the unilateral actions taken by the . . . City of Hoboken.  Thus, this [c]ourt finds that the [C]ity did not have the managerial prerogative to unilaterally set salaries for those employees who exercised "demotional" bumping rights into lower titles under the layoff plan.

As noted by Judge D'Elia, the City agrees there was no emergency regulation enacted to permit the City to disregard the CBA and set salaries as a matter of managerial prerogative.  Thus, the arbitrator erred as a matter of law to the extent he relied on the fiscal crisis alone as the reason why the wages of the demoted workers were non-negotiable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14

A-0143-21